**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

EDIBLE IP, LLC; and EDIBLE
ARRANGEMENTS, LLC,

      Plaintiffs,

v.

WORLD MEDIA GROUP, LLC,

      Defendant.

CIVIL ACTION

NO: _____

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiffs Edible IP, LLC and Edible Arrangements, LLC (collectively, "Edible") file this Complaint for a domain name transfer, damages, a permanent injunction, and other relief against World Media Group, LLC ("Defendant") and show the Court as follows:

### **NATURE OF THE ACTION**

1.    This is a civil action against Defendant for federal domain name piracy; federal and state trademark and service mark infringement; federal unfair competition, false designation of origin, and palming off; Georgia common law unfair competition; Georgia statutory deceptive trade practices; and cancellation of a federal service mark registration for abandonment, arising out of Defendant's

infringement and other wrongdoing with respect to Edible's federally registered EDIBLE mark and EDIBLE-formative trademarks and service marks, which Edible has extensively and continuously used nationwide and before Defendant to identify Edible's gifting and food-related goods and services throughout the United States prior to Defendant's conduct complained of herein.

2.      Thereafter, and junior to Edible's first trademark and service mark use in commerce, Defendant began and continues to use the virtually identical mark "EDIBLES" (the "EDIBLES Name" or the "Infringing Mark") to, at different times depending on convenience to Defendant's attempt to coerce a large payout from Edible, promote and offer competing gift and food-related products and services, as well as Defendant's mobile application ("app") for food related goods and services.

3.      This Complaint is brought pursuant to the trademark laws of the United States, Title 15, United States Code, as well as pursuant to the unfair competition and deceptive trade practices laws of the state of Georgia, and asserts claims for:

- federal domain name piracy under the Anticybersquatting Consumer Protection Act ("ACPA"), Section 43(d) of the Lanham Act (also

known as the Trademark Act of 1946), 15 U.S.C. § 1125(d) (Count
One);

- federal trademark and service mark infringement in violation of
  Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count Two);

- federal unfair competition, false designation of origin, and palming
  off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §
  1125(a) (Count Three);

- Georgia common law trademark and service mark infringement
  (Count Four);

- Georgia common law unfair competition (Count Five);

- violation of Georgia's Uniform Deceptive Trade Practices Act,
  O.C.G.A. § 10-1-370 *et seq.* (Count Six); and

- cancellation of Defendant's federal service mark registration for
  EDIBLE: PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE, U.S.
  Registration No. 4857834 in accordance with 15 U.S.C. §§ 1119,
  1052(d), and 1064 (Count Seven).

4.    In bringing this lawsuit, Edible seeks a judgment of forfeiture and
transfer of Defendant's offending domain name <www.edibles.com> (the "Domain
Name" or "Disputed Domain") to Edible; recompense for damages measured by an

accounting of Defendant's profits (*i.e.*, the sales that Defendant has made) from its cybersquatting, trademark and service mark infringement, unfair competition, false designation of origin, palming off, and deceptive trade practices, plus any additional sum as the Court shall find to be just, which shall constitute compensation; three times any actual damages that Edible has sustained as a result of Defendant's unlawful actions; or, at Edible's election to be made before trial, statutory damages in lieu of actual damages on the cyberpiracy claim; cancellation of Defendant's federal service mark Registration No. 4857834; permanent injunctive relief to stop Defendant's illegal use and infringement of Edible's EDIBLE and EDIBLE-formative marks; punitive damages; reasonable attorney's fees; and costs.

## THE PARTIES

5.      Plaintiff Edible IP, LLC is a Connecticut limited liability company whose member is Edible Brands, LLC, a Delaware company.  Edible IP's principal place of business is in Fulton County, Georgia at 980 Hammond Drive, Atlanta, GA 30328.  Edible IP owns all of the trademarks, service marks, trade names, common law intellectual property, and other goodwill associated with the brand "EDIBLE."  As discussed in more detail below, Edible IP licenses this property to

Edible Arrangements, LLC and other entities that conduct business using the name EDIBLE.

6.      Plaintiff Edible Arrangements, LLC is a Delaware limited liability company with a principal place of business at 980 Hammond Drive, Atlanta, Georgia 30328.

7.      On information and belief, Defendant World Media Group, LLC is a New Jersey limited liability company with its principal place of business in the state of New Jersey and offices located at 25 Mountainview Boulevard, Suite 204, Basking Ridge, New Jersey 07920.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction over Edible's claims as federal questions pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b).

9.      This Court has supplemental jurisdiction over the claims for trademark infringement, unfair competition, and deceptive trade practices that arise under the state of Georgia's statutory and common law pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Edible IP, LLC and Edible Arrangements, LLC because their principal places of business are in this judicial district and by virtue of their filing of this Complaint, they consent to this Court's jurisdiction.

11.     Defendant is subject to general and specific personal jurisdiction in this district under the Due Process Clause of the United States Constitution and the laws of the state of Georgia because:  Defendant has minimum contacts within the state of Georgia and the Northern District of Georgia pursuant to due process and the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1), (2), and (3), including via its highly interactive websites <www.edibles.com> and <worldmediagroupllc.com>, which are designed to facilitate or conduct business transactions over the Internet, and Defendant advertises, solicits clients, and conducts continuous, systemic, and routine business, or purposefully avails itself of the opportunity to conduct commercial activities in the state of Georgia and within this judicial district, subjecting it to personal jurisdiction in this district; and Edible's causes of action arise directly from Defendant's business contacts and other activities in the state of Georgia and in the Northern District of Georgia. More specifically, Defendant directly offers, transacts businesses, and advertises (including through the provision of web pages) its products and services in the

state of Georgia and the Northern District of Georgia where residents can and do use Defendant's goods and services offered and distributed under the infringing mark "Edibles."  Defendant has committed trademark infringement, false designation of origin, and deceptive trade practices in the state of Georgia and in the Northern District of Georgia.

12.    Confirming Defendant's pattern of regularly conducted business in the state of Georgia and in the Northern District of Georgia, Defendant actively offers and advertises its EDIBLES mobile application to Georgia residents from its EDIBLES Website where residents of Georgia can download, do download, and have downloaded the EDIBLES mobile application onto their mobile phones within the state of Georgia and the Northern District of Georgia.  Representative screen captures showing the EDIBLES application available for download by a resident of Georgia while present in the Northern District of Georgia, on August 5, 2020, are as follows:





13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Edible's claims occurred in this District, and/or 28 U.S.C. § 1391(b)(3) because Defendant is subject to this Court's personal jurisdiction with respect to such action.

## FACTUAL BACKGROUND

### <u>Edible and Its Businesses</u>

14.     Edible Arrangements LLC is the successful franchisor of stores offering fresh-cut fruit products.  It is well known for its artistically designed fresh-fruit products evocative of floral designs, its dipped fruit products like chocolate dipped strawberries, and baked goods.  These highly regarded products are available through an extensive network of franchises located throughout the United States and abroad, and through its website, its call center, the Internet, and a handful of affiliate-owned stores.

15.     Edible IP, LLC is the owner and licensor of, among other things, the various trademarks, service marks, trade dress, domain names, copyrights, and other intellectual property used and associated with the highly-successful, widely-recognized and distinctive "Edible" brand and business, as set forth in greater detail below.  Edible IP, LLC licenses these intellectual property assets to Edible Arrangements, LLC for use and sublicensing through Edible Arrangements, LLC's franchise system and websites.

16.     Tariq Farid founded Edible in what has become a famous American success story.  Mr. Farid emigrated from Pakistan when he was twelve years old.

10

Beginning when he was only sixteen, Mr. Farid purchased his first flower shop. Within several years he grew his business to four locations.

17.     Then came his entrepreneurial breakthrough: Mr. Farid developed a unique marketing program of providing floral arrangements made from fresh-cut fruit instead of flowers.  The fresh fruit is cut and sculpted to look like beautiful floral designs.

18.     In 1999, Mr. Farid opened the first "Edible Arrangements" store, through which he introduced his unique cut fruit products.

19.     The Edible brand and business grew enormously.  Two years after opening his first store, Mr. Farid introduced Edible franchises.  And only three years after launching the first franchise, *Entrepreneur Magazine* recognized Edible in the top 500 franchises in the United States.

20.     By 2006, there were 500 Edible franchises, and by 2011 there were 1,000.  In 2012, there were almost 175,000 Edible deliveries in Georgia, and hundreds of thousands of Edible customers living here. By 2019, there were almost 1,200 Edible stores worldwide, with more than 1,100 stores located throughout the United States, including in the state of Georgia.

21.     Edible's success has been continuously recognized by the business media.  For example, Edible ranked 9th on the 2011 Forbes list of top "franchises

to start"; was named one of the "Top 100 Internet Retailers" by Internet Retailer magazine; was 38th on Entrepreneur Magazine's 2017 Entrepreneur Franchise 500; and was ranked 3rd on Inc. Magazine's list of top food and beverage companies.  Most recently, the Franchise Times ranked Edible number 128 in the list of the "Top 200 Franchises."

22.     After over 20 years of substantial and uninterrupted use, combined with extensive advertising and promotion, the EDIBLE brand is distinctive and well-known to the public.

23.     Edible's system-wide revenue is in the hundreds of millions of dollars annually.  Edible's success is a direct result of its commitment to providing consistently high-quality and beautifully designed product and services that consumers recognize as originating from Edible, as well as Edible's marketing and promotion of the EDIBLE marks and brand.

24.     Edible's franchisees share in the commitment to consistently deliver high-quality, beautifully designed fruit baskets and arrangements, as well as products such as dipped and coated fruit, baked goods, smoothies including protein smoothies with whey protein, popcorn, and other gifts (stuffed animals, mugs, balloons, candles, etc.) to consumers that are instantly recognizable as an Edible product offered under the EDIBLE Marks and brand, and which are offered in

brick and mortar stores and online through Edible's various domains including www.ediblearrangements.com and www.edible.com.

25.     Any consumer misperception or confusion as to the affiliation of Edible or its EDIBLE-branded products and services with competitors or their products and services will irreparably damage Edible's valuable brand and goodwill, as well as that of the franchisees, who devote significant personal resources to running their shops.

## Edible's Intellectual Property Rights

26.     Edible's business is predicated on the high quality of its gifting and food-related goods and services and the trademarks and service marks that designate those goods and services.

27.     By marketing and promoting the "EDIBLE" brand identifiers aggressively in connection with its hugely-popular products and services, Edible has created a stable of extremely well-known marks that the public uses to identify and distinguish Edible's goods and services in the marketplace.

28.     Edible first obtained a United States Trademark and Service Mark Registration for EDIBLE ARRANGEMENTS® (Reg. No. 2,356,362) in Class 29 on the Principal Register on June 6, 2000 with a first use and first use in commerce

date of October 1998.  Edible has used that mark continuously and exclusively for over 20 years, long ago achieving incontestability pursuant to 15 U.S.C. § 1065.

29.     Edible also owns United States Trademark Registration No. 4,319,940 for EDIBLE® in Classes 29, 30, 32, and 35, having a date of first use of 1999.  The United States Patent and Trademark Office ("USPTO") registered the EDIBLE® mark on the Principal Register in 2012 pursuant to 15 U.S.C. § 1052(f).  The registration is now incontestable pursuant to 15 U.S.C. § 1065.

30.     Edible is also the owner of numerous other federal registrations on the Principal Register for EDIBLE (stand-alone) and EDIBLE-formative marks in which the USPTO has found that Edible acquired distinctiveness in the "EDIBLE" portion of the marks, including, but not limited to, Registration No. 5,614,310 for EDIBLE; Registration No. 5,513,739 for EDIBLE and Design; Registration Nos. 4,328,107, 3,844,160, and 2,934,715 for EDIBLE ARRANGEMENTS; and Registration No. 5,286,720 for EDIBLE ARRANGEMENTS and Design.

31.     The aforementioned Edible registrations (collectively, the "EDIBLE Marks") are summarized along with their dates of application, registration, first use, and incontestability status on the table immediately below:

14

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| EDIBLE*<br><br>[Trademark/Service Mark] | F: 04/10/2012<br>R: 04/16/2013 | RN: 4319940<br>SN: 85593869 | (Int'l Class: 29)<br>1st U: 01/01/1999<br>1st UIC: 01/01/1999<br><br>(Int'l Class: 30)<br>1st U: 01/01/1999<br>1st UIC: 01/01/1999<br><br>(Int'l Class: 32)<br>1st U: 04/01/2006<br>1st UIC: 04/01/2006<br><br>(Int'l Class: 35)<br>1st U: 01/01/1999<br>1st UIC: 01/01/1999 |
| EDIBLE<br><br>[Trademark] | F: 11/17/2016<br>R: 11/27/2018 | RN: 5614310<br>SN: 87240682 | (Int'l Class: 29)<br>1st U: 00/00/2000<br>1st UIC: 00/00/2000<br><br>(Int'l Class: 30)<br>1st U: 00/00/2000<br>1st UIC: 00/00/2000 |
| EDIBLE and Design<br><br>🧁 edible | F: 12/19/2017<br>R: 07/10/2018 | RN: 5513739<br>SN: 87726591 | (Int'l Class: 29)<br>1st U: 11/00/2017<br>1st UIC: 11/00/2017 |

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| [Trademark/Service Mark] | | | (Int'l Class: 30) 1st U: 11/00/2017 1st UIC: 11/00/2017

(Int'l Class: 35) 1st U: 11/00/2017 1st UIC: 11/00/2017 |
| EDIBLE ARRANGEMENTS*

[Trademark] | F: 09/07/2012 R: 04/30/2013 | RN: 4328107 SN: 85723499 | (Int'l Class: 21) 1st U: 01/01/2007 1st UIC: 01/01/2007

(Int'l Class: 28) 1st U: 01/01/2007 1st UIC: 01/01/2007 |
| EDIBLE ARRANGEMENTS*

[Trademark/Service Mark] | F: 10/29/2009 R: 09/07/2010 | RN: 3844160 SN: 77860061 | (Int'l Class: 29) 1st U: 10/00/1998 1st UIC: 10/00/1998

(Int'l Class: 30) 1st U: 10/30/1998 1st UIC: 10/30/1998

(Int'l Class: 32) 1st U: 05/12/2005 1st UIC: 05/12/2005 |

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| | | | (Int'l Class: 35) 1st U: 10/31/1998 1st UIC: 10/31/1998 |
| EDIBLE ARRANGEMENTS* [Trademark] | F: 05/13/2003 R: 03/22/2005 | RN: 2934715 SN: 78249281 | (Int'l Class: 31) 1st U: 10/31/1998 1st UIC: 10/31/1998 |
| EDIBLE ARRANGEMENTS and Design edible arrangements [Trademark/Service Mark] | F: 04/21/2015 R: 09/12/2017 | RN: 5286720 SN: 866050033 | (Int'l Class: 29) 1st U: 01/00/2016 1st UIC: 01/00/2016  (Int'l Class: 30) 1st U: 01/00/2016 1st UIC: 01/00/2016  (Int'l Class: 32) 1st U: 01/00/2016 1st UIC: 01/00/2016  (Int'l Class: 35) 1st U: 01/00/2016 1st UIC: 01/00/2016 |

32.     Each of the registrations for the EDIBLE Marks are enforceable, valid, unrevoked, and subsisting.

33.     In addition, of the registrations pleaded in the table in paragraph 31 above, those that are highlighted with an asterisk have been in consistent use for five or more consecutive years since registration and are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065, which therefore constitutes conclusive evidence of (i) the registration of the marks; (ii) the validity of the marks; (iii) Edible's ownership of the marks; and (iv) Edible's exclusive right to use the marks in commerce in connection with the identified services, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

34.     Furthermore, an incontestable mark may not be challenged as merely descriptive. 15 U.S.C. §§ 1065, 1115(b).

35.     Edible also owns nationwide common law rights to the EDIBLE Marks based on the continuous and extensive bona fide use of the marks by Edible in interstate commerce throughout the United States to promote Edible's goods and services over the past twenty years.

36.     Edible believes and alleges that Defendant has infringed on Edible's trademarks and service marks, engaged in unfair competition, false designation of origin and palming off, and committed deceptive trade practices for each of the marks asserted in this litigation against Defendant, namely, the following:  U.S.

Registration Nos. 4,319,940 (for EDIBLE); 4,328,107; 3,844,160; and 2,934,715 (for EDIBLE ARRANGEMENTS) (hereafter the "EDIBLE Marks").

37.     Edible has continuously used, advertised, and promoted the EDIBLE Marks throughout the United States and world for many years in connection with genuine Edible goods and services.

38.     Over the last twenty years, Edible has spent millions of dollars and has expended significant effort in promoting genuine Edible goods and services under the EDIBLE Marks.

39.     Edible actively enforces its rights in the EDIBLE Marks against third parties.

40.     The EDIBLE Marks serve as the banner of quality that identify and distinguish Edible's goods and services from those of others in the marketplace and indicate the source of Edible's products and services.

41.     The EDIBLE Marks are widely recognized by the general consuming public as identifying Edible and its products and services.

42.     Edible's branding is widely suffused with references to and displays of these well-known marks.

43.     The EDIBLE Marks are used to reinforce consumer perception that all the goods and services through Edible and its franchisees' stores emanate from Edible.

44.     The cumulative effect of this comprehensive promotion of the EDIBLE Marks is that consumers—whether purchasers, shoppers, recipients, or even viewers of advertising or refrigerated delivery vehicles—are constantly informed that the EDIBLE Marks designate the source of the Edible products and services that circulate regularly throughout United States commerce.

45.     By virtue of this extensive usage in connection with so many highly regarded products and services, the EDIBLE Marks have become widely known to the general consuming public of the United States, has acquired significant secondary meaning, and represent goodwill of enormous value to Edible.

### *Defendant World Media Group and Its Registration and Renewals of The Disputed Domain <www.edibles.com>*

46.     Defendant World Media Group, LLC operates an Internet development company.

47.     According to its website located at <www.worldmediagroupllc.com>, Defendant specializes in bringing "natural brands to life in valuable ways for the consumers online. World Media Group develops through its own global team of

talented developers or in conjunction with core partners that are aligned to ensure the brands meet their tremendous potential."

48.     Defendant owns and has owned a large portfolio of domain names that Defendant offers for sale and has sold, sometimes for millions of dollars.

49.     A "domain name" is the part of a network address that identifies it as belonging to a particular domain.

50.     Domain name "registration" is the act of reserving a name on the Internet for a certain time period, usually a year.

51.     The person, company, or entity who owns or holds a domain name is referred to as the "registrant."

52.     A domain name "registrar" is a company that manages the reservation of Internet domain names.

53.     Some registrars offer discounts when a registrant such as Defendant renews a domain name for periods of 2, 3 or 5 years.

54.     There is no way to purchase a domain name forever, and the domain will remain in the name of a registrant as long as it is renewed.

### *Use of The Domain Name <www.edibles.com>*
### *to Direct to Defendant's "EDIBLES" Website*

55.     Prior to 2009, the Disputed Domain <www.edibles.com> was a "parked page", which is a page not associated with a specific website and has a simple layout with a list of links related to the domain name.  Parked page links may generate advertising revenue for the parked domain's owner when users click on them.

56.     Defendant registered the Disputed Domain <www.edibles.com> in or around June 2009, after the EDIBLE Marks came into existence and with at least constructive notice of Edible's priority rights in each of the EDIBLE Marks that were federally registered as of that date prior to Defendant's junior and subsequent infringing use of the EDIBLE Marks.

57.     On information and belief, Defendant also had full and actual knowledge of Edible's priority rights in each of the EDIBLE Marks that were used and being used before and as of that date prior to Defendant's junior and subsequent infringing use of the EDIBLE Marks.

58.     When Defendant registered the Domain Name <www.edibles.com> in 2009 post-dating the EDIBLE Marks, Defendant acted in bad faith.

59.     At the time that Defendant first registered the Domain Name in 2009,

when an Internet user typed in the URL <www.edibles.com> into their Internet

address bar or another search engine such as Google or Bing and pressed "Enter",

the Disputed Domain <www.edibles.com> would direct the user to a parked page

titled "Edibles.com" that displayed a list of gift and food-related links.

60.     During this same time period the parked page associated with the

Domain Name <www.edibles.com> had pay-per-click advertisements placed on it

which were used to drive traffic to the webpage wherein the domain name holder

Defendant made money when the ads were clicked.

61.     When Defendant first registered the Domain Name in 2009, the

subject website provided no bona fide products or services of Defendant and did

not use EDIBLES as a trademark or service mark.

62.     In the upper left-hand corner of this webpage immediately to the right

of the word "EDIBLES" appeared chocolate-covered strawberries with a white

chocolate drizzle strongly resembling Plaintiff Edible's products.

63.     On the left-hand side of the page appeared the heading "GIFT

BASKETS" in green font over a listing of links to items, including "Fruit gift

baskets," "Edible Gift Basket," etc., which are among Edible's most well-known

products.

64.     Underneath that list was the heading "EDIBLES," again in green font, over a listing of links to items including "Edbile (sic) Fruit Basket," "Edible Inc.," "Incredible Edibles", Fruit Edibles," etc.; and last, underneath that, was the heading "CHOCOLATES" over a listing of links to items such as "Chocolate Fruit," Chocolate Berries," "Brownies," etc.

65.     In the center of the page was the heading "POPULAR EDIBLES SEARCHES".  Underneath that heading were links to, among other things, "Chocolates," over a listing of links to items, including "Chocolate Covered Strawberries," etc., as well as other headings and links.

66.     Defendant did not at the time, and does not, provide fruit baskets, gift baskets, baked goods, or any other goods or services.  Rather, such references were a blatant and illegal attempt to trade off of Edible's significant trademark and service rights in the EDIBLE Marks on fruit baskets, chocolate-dipped strawberries and fruit, gift baskets, and baked goods.

67.     The Disputed Domain <www.edibles.com> continued to reference products and services identical to those of Edible for at least five years after 2009.

68.     By December 2014, the Disputed Domain <www.edibles.com> began being directed instead to a parked webpage related to generic gifting, with links to

content regarding "Gifts for Moms", "Gifts for Dads", "Friend Gifts", and the like. This webpage or a similar gifting webpage remained until sometime in 2018.

69.     By June 2018, the Disputed Domain <www.edibles.com> began being directed to a parked webpage under construction labeled "Coming Soon", and referencing content related to domain name investment.  No products or services were offered for sale or sold.

70.     By February 2019, the Disputed Domain <www.edibles.com> began being directed instead to a webpage that advertised Defendant's World Accelerator branding services that build off of the use of what Defendant identifies as "premium domain names."

71.     By August 2019, the Disputed Domain <www.edibles.com> began being directed to a webpage (hereafter the "EDIBLES Website") that promote an "app" of Defendant's named "Edibles" (the "EDIBLES App").

72.     In the upper-left-hand corner of the homepage of Defendant's EDIBLES Website the term "*Edibles*" appeared and continues to appear today prominently in stylized (italics) lettering in green type face clearly distinct and part from any other wording around it and not within a paragraph of text, as shown in the screen captured reproduced below:

73.     In the lower-left-hand corner of the homepage of Defendant's EDIBLES Website the stylized term "*Edibles*" appears again distinctly apart from any other wording and over the street address 25 Mountainview Boulevard, Suite 206, Basking Ridge, New Jersey, 02920, which matches the address for Defendant. Immediately below the address appears the copyright notice: "© 2009-2019 World Media Group, LLC. Terms & Privacy".

74.     Defendant's commercial use in commerce of the EDIBLE Marks in the Disputed Domain <www.edibles.com> to direct to the EDIBLES Website constitutes federal cyberpiracy, as set forth more fully below.

75.     The Defendant's EDIBLES App, according to Defendant, is an app for use by the general public and health professionals "to quickly find calorie and nutrition data for 1,000's of food items."

76.     The Edibles App is of limited and primitive functionality.  Unlike other popular web-based health and wellness apps available such as "MyFitnessPal" and "Food," which are feature-rich, including the ability to keep track of your daily food and beverage intake; to calculate all your nutrients, calories, and vitamins; to progress toward and achieve goals; and to access many more food and beverage items including brand and store names (e.g., "Doritos", Publix, "Kroger," ); and in the case of the "Food" app has barcode scanning

26

functionality, in contrast, the Defendant's EDIBLES App offers no customized options.

77.     Rather, the EDIBLES App is a generic food database that merely sources data from the United States Government, giving the strong impression that the EDIBLES App is a sham and ruse merely to reserve for Defendant the Disputed Domain for potential and speculative future use and development while preventing Edible from using it and intentionally attempting to attract uses for commercial gain by creating a likelihood of confusion as to source or affiliation with Edible.

78.     Upon information and belief, Defendant acquired the EDIBLES App from an unrelated third party in 2015 as a sham to create the appearance that Defendant has a legitimate business purpose for the Disputed Domain <www.edibles.com> when Defendant does not in fact, and to hide Defendant's true intent to derive financial benefit from sale of the Disputed Domain to Edible in bad faith.

79.     Upon information and belief, certain of Defendant's changes to the webpage displayed at the Disputed Domain <www.edibles.com> were made as a direct result of Defendant's ongoing conversations with Edible's founder, Tariq

Farid, in an attempt by Defendant to create leverage for Defendant in negotiating an exorbitant price for sale of the Disputed Domain to Edible.

80.     Defendant's bad faith is further established, *inter alia*, because Edible on multiple occasions has specifically informed Defendant that the Disputed Domain <www.edibles.com> is likely to create consumer confusion and constitutes unauthorized use of the EDIBLE Marks; yet, Defendant continues to register and use the Domain Name with the intent of coercing Edible into paying an exorbitant sum of money for the Disputed Domain and diverting consumers from Edible's website in an attempt to profit from consumer deception and misappropriation of Edible's goodwill.

81.     Since 2009, Defendant has held and renewed the registration for the Disputed Domain <www.edibles.com> every year from 2010 through 2020, and each time Defendant did so, Defendant acted in bad faith.

82.     Defendant renewed the Disputed Domain most recently in January 2020, this time for a period of five years through March 30, 2025, again only after having received multiple actual notices from Edible of Defendant's infringement and unfair competition and acting in bad faith.

***Defendant's EDIBLES Mark Creates the Same Commercial Impression
as Edible's Senior EDIBLE Marks and is the Legal Equivalent Thereof***

83.     The EDIBLES name that Defendant has adopted and used in association with the Disputed Domain <www.edibles.com> is the legal equivalent of the EDIBLE Marks, for which Edible owns an incontestable registration for similar food related goods pursuant to 15 U.S.C. § 1065, and for which the USPTO has found that Edible has proven that the mark has acquired secondary meaning pursuant to Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).

84.     Edible's EDIBLE Mark and Defendant's infringing EDIBLES name are legal equivalents for determining a likelihood of confusion.

85.     Marks consisting of the singular and plural forms of the same root term are the same mark and have no material difference in a trademark sense.

86.     Defendant's junior-adopted EDIBLES name should be viewed as the same as the EDIBLE Marks, for which Edible already owns multiple registrations, many of which have obtained incontestable status, for closely-related products and services to those promoted and offered by Defendant in U.S. commerce using the Disputed Domain <www.edibles.com>.

87.     The goods and services identified by both the EDIBLE Marks on the one hand, and EDIBLES name on the other hand, are related and, in this case,

virtually identical, and there is no basis on which not to find a likelihood of confusion.

88.    Because the EDIBLES mark promoted, advertised, and has been used by Defendant to offer goods and services is the equivalent of Edible's EDIBLE marks, the Defendant's EDIBLES mark should be deemed to create a likelihood of confusion.

89.    The plural form of Edible's incontestable EDIBLE mark has no material distinction from the Defendant's EDIBLES, and the two are therefore legal equivalents such that there is a likelihood of confusion.

### The USPTO Has Already Found Defendant's EDIBLES and EDIBLES.COM "Nearly Identical to" and Confusingly Similar to Edible's EDIBLE Mark In Refusing Registration

90.    On October 17, 2014, Defendant filed in the USPTO Application Serial No. 86426743 to register as a service mark EDIBLES in Class 45 for "Personal gift selection for others, namely, recommending and providing information on appropriate gifts for moms, dads, spouse, children, and friends." Defendant claimed a date of first use and first use in commerce of that mark of October 15, 2014.

91.    Also on October 17, 2014, Defendant filed in the USPTO Application Serial No. 86426753 to register as a service mark EDIBLES.COM in Class 45 for "Personal gift selection for others, namely, recommending and providing

information on appropriate gifts for moms, dads, spouse, children, and friends."
Defendant alleged a date of first use and first use of that mark in commerce of
October 15, 2014.

92. On February 10, 2015, the USPTO issued an Office Action refusing
registration of Defendant's Application Serial No. 86426743 for EDIBLES on the
basis of likelihood of confusion with Edible's EDIBLE mark in Edible's now-issued
Registration No. 4319940.

93. Therein, the USPTO held that, "In the present case, applicant's mark is
EDIBLES and registrant's mark is EDIBLE. Thus, the marks are **nearly identical**
in terms of appearance and sound.  In addition, the connotation and commercial
impression of the marks do not differ when considered in connection with
applicant's and registrant's respective services.   **Therefore, the marks are
confusingly similar**" (emphasis added).

94. Also on February 10, 2015, and under the same reasoning, the USPTO
issued an Office Action refusing registration of Defendant's EDIBLES.COM
application (Serial No. 86426753) on the basis of a likelihood of confusion with
Edible's now-issued registration for EDIBLE (Registration No. 4319940).

95.     Thereafter, on March 19, 2015, Defendant filed Requests for Express Abandonment of its applications for the EDIBLES and EDIBLES.COM service marks and the marks went abandoned.

96.     The USPTO therefore has already found that both Defendant's EDIBLES and EDIBLES.COM on the one hand, and Edible's EDIBLE Mark on the other hand, are nearly identical in a trademark sense.

97.     A finding of a likelihood of confusion resulting from Defendant's unauthorized use of EDIBLES would be consistent with previous USPTO determinations on the issue.

### Defendant's Registration and Abandonment of U.S. Service Mark Reg. 4857834

98.     Defendant is the current owner of U.S. Service Mark Registration No. 4857834 for the mark EDIBLES: PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE for "Personal gift selections for others, namely, recommending and providing information on appropriate gifts for moms, dads, spouses, children, and friends," registered on November 24, 2015.  The registration claims a date of first use and first use in commerce of that mark of October 15, 2014.

99.     Upon information and belief, and after diligent investigation, Edible believes that as of today, and for at least the last three several years, Defendant has abandoned the mark and the business of personal gift selections altogether and has

no intent to resume use, including at least because Defendant has altered the

Disputed Domain <www.edibles.com> that once related to gifts to now relate to

the sham EDIBLES App.

100.   Upon information and belief, Defendant does not use the mark in

association with any of the services listed on that application to register.

101.   The subject registration is contestable, meaning that it is less than five

(5) years old and is subject to a Petition to Cancel Registration.

102.   Edible believes that it is damaged and will be damaged by the mark

covered by Registration No. 4857834 being on the Principal Register and that the

subject registration should be ordered canceled for abandonment by this Court.

**COUNT ONE**
**Federal Cyberpiracy**
**(Pursuant to 15 U.S.C. § 1125(d))**

103.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

104.   This claim is brought under the ACPA, Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(d), for Defendant's registration and re-registration of a

Domain Name that is identical or substantially similar to and the legal equivalent

of Edible's EDIBLE Marks with bad faith intent to profit from the good will of

Edible's EDIBLE Marks and brand, in the hopes of selling that Domain Name at

an exorbitant profit.

105.    Defendant is the registrant of the Disputed Domain <www.edibles.com>.

106.    Defendant first registered the Disputed Domain www.edibles.com in 2009.

107.    Defendant registered, trafficked in, used, and is currently using the Disputed Domain <www.edibles.com>.

108.    Edible is the owner of the EDIBLE Marks.

109.    Each of Edible's EDIBLE Marks were distinctive at the time of Defendant's registration of the Disputed Domain <www.edibles.com> in 2009.

110.    One or more of the EDIBLE Marks, including the EDIBLE ARRANGEMENTS®, was famous at the time of Defendant's registration of the Disputed Domain <www.edibles.com> because they were widely recognized by the general public as identifying Edible's goods and services.

111.    Defendant's Disputed Domain <www.edibles.com> is identical to, confusingly similar to, or in the case of the EDIBLE Marks which are famous is dilutive of, the EDIBLE Marks.

112.    Defendant does not have any intellectual property or other rights in the name "Edibles" for any goods and services and did not have such rights at the time it registered the Disputed Domain.

113.   Defendant has never used the name "Edibles" to identify itself, let alone consistently and continuously, and Defendant has never been commonly known by the name "Edibles."

114.   On information and belief, Defendant has never made use of the name "Edibles" in connection with the offering or sale of any bona fide good or service.

115.   On information and belief, Defendant has never made any bona fide fair use of the name "Edibles" on any website.

116.   Defendant used, registered, and trafficked in the Disputed Domain <www.edibles.com> to divert consumers to Defendant's Edibles Website and its sham EDIBLES App for Defendant's ill-gotten commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendant's EDIBLES Website and EDIBLES App.

117.   Defendant both initially and thereafter registered, has used, and trafficked in the Disputed Domain <www.edibles.com> in bad faith with the intent to profit from unauthorized use of the EDIBLE Marks by diverting traffic away from Edible's business and from sale of the Disputed Domain to Edible at an exorbitant price.

118.   Defendant's bad faith is established, *inter alia*, because despite the fact that Edible has specifically informed Defendant on multiple occasions that the

35

Disputed Domain is likely to create consumer confusion and constitutes

unauthorized use of the EDIBLE Marks, Defendant continues to use the Disputed

Domain with the intent of diverting consumers from Edible's website in an attempt

to profit from consumer deception and misappropriation of Edible's goodwill.

119.   Defendant did not have reasonable grounds to believe that the use of

the Disputed Domain was a fair use or was otherwise lawful.  On information and

belief, Defendant did not actually have the belief that the use of the Disputed

Domain was fair use or was otherwise lawful.

120.   Further, each time that Defendant annually re-registered and renewed

the Disputed Domain <www.edibles.com> from 2010 through 2020, Defendant

acted in bad faith.

121.   Defendant has acted knowingly and willfully.  Further, as Edible has

informed Defendant on multiple occasions both prior to Defendants re-registration

of the Domain Name and prior to the filing of this lawsuit that its acts constitute

infringement and unfair competition, Defendant has reaffirmed that it has acted

knowingly and willfully.

122.   Defendant's actions described above and specifically, without

limitation, Defendant's registering, trafficking in, and using the Disputed Domain

<www.edibles.com> confusingly similar to, or dilutive, of the distinctive or

famous EDIBLE Marks with a bad faith intent to profit from the EDIBLE Marks,
Defendant has violated the ACPA, codified at Section 43(d) of the Lanham Act, 15
U.S.C. § 1125(d), causing damage and irreparable injury to Edible and the public.

123.   As a result of Defendant's previously mentioned actions, Edible is
entitled to an order against Defendant forfeiting and transferring the Disputed
Domain <www.edibles.com> to Edible pursuant to 15 U.S.C. § 1125(d)(1)(C).

124.   As a result of Defendant's acts, Edible has sustained actual damages
to its business, marks, goodwill, and reputation proximately resulting from
Defendant's wrongful acts and is entitled to recover three times the amount of its
actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117.

125.   In addition to Edible's actual damages, pursuant to 15 U.S.C. § 1117,
Edible is also entitled to an award based on an accounting of Defendant's profits
measured by Defendant's sales because Defendant's conduct was willful and
deliberate, Defendant was unjustly enriched, and an award of Defendant's profits is
necessary to deter Defendant's future conduct.

126.   Defendant's knowing and willful behavior constitutes grounds for
Edible's recovery of the maximum allowable statutory damages under 15 U.S.C. §
1117(d), $100,000.00, should Edible elect to recover statutory damages in lieu of
actual damages and profits.

127.   As a result of Defendant's acts, Edible has suffered and will continue to suffer irreparable harm to its goodwill and reputation, and Edible has no adequate remedy at law with respect to this injury.

128.   Unless Defendant's acts are permanently enjoined by this Court, Edible will continue to suffer irreparable harm and/or a risk of irreparable harm.

129.   As this is an exceptional case, Defendant's acts have been knowing, intentional, wanton, and willful, and Edible is further entitled to enhanced damages and reasonable attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117.

130.   Pursuant to 15 U.S.C. § 1117, Edible is also entitled to its costs incurred in this action.

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

**COUNT TWO**
**Infringement of the Federally Registered**
**Asserted EDIBLE Trademarks and Service Marks**
**(Pursuant to 15 U.S.C. § 1114(1)(a))**

131.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

132.   Edible owns each of the EDIBLE Marks identified above in paragraph 31 that are covered by registrations on the Principal Register of the U.S. Patent and Trademark Office and are entitled to protection.

133.   Edible is the senior user of the EDIBLE Marks as compared to Defendant's use of the EDIBLES name, particularly with respect to the gifting and food-related services provided in association with the EDIBLES Website.

134.   By virtue of Edible's federally-registered EDIBLE Marks, Edible enjoys constructive nationwide priority in those marks and is presumed to have started using the marks as of their respective filing dates, which are set forth in the table in paragraph 31 above.

135.   Because Edible owns a federal registration in each of the EDIBLE Marks, Defendant is deemed to have knowledge of the registration and of the rights claimed in the registration, and because of this constructive notice, Defendant cannot claim that it adopted, registered, renewed, and used the infringing EDIBLES mark without knowledge of the EDIBLE Marks.

136.   Despite Edible's well-known prior rights in the EDIBLE Marks, Defendant has, without Edible's authorization or consent, used and continues to use in commerce in the United States and this judicial district, Edible's federally-registered EDIBLE Marks, or reproductions, copies, and colorable imitations thereof, in connection with the sale, offering for sale, distribution, and/or advertising of Defendant's goods and services, including Defendant's use in commerce of the mark EDIBLES in connection with the promotion and offer of

39

goods or services that compete with and/or are closely-related to Edible's goods on the EDIBLES Website (located at <www.edibles.com>), in a manner that infringes upon the EDIBLE Marks and is likely to cause confusion, mistake, and deception as to the source, affiliation, approval or sponsorship of the goods and services, leading the consuming public to believe that Defendant's goods and services, and the goods and services advertised and promoted at Defendant's EDIBLES Website, are the goods and services of Edible, or are sourced or originate from, or are affiliated, approved, or sponsored by, or are in some way connected with Edible.

137.   Defendant's actions constitute willful infringement of Edible's exclusive rights in the EDIBLE Marks in violation of 15 U.S.C. § 1114.

138.   Defendant's use of the EDIBLE Marks, copies, reproductions, or colorable imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendant's goods and services.

139.   Edible has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's conduct is allowed to continue.

140.   As a direct and proximate result of Defendant's previously alleged conduct, Edible and the public have suffered irreparable harm that is not remedied

by money damages.  Unless Defendant is permanently enjoined from further infringement of the EDIBLE Marks, Edible will continue to be irreparably harmed.

141.   As a result of Defendant's acts, Edible has sustained actual damages to its business, marks, goodwill, and reputation proximately resulting from Defendant's wrongful acts and is entitled to recover three times the amount of its actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117.

142.   In addition to Edible's actual damages, pursuant to 15 U.S.C. § 1117, Edible is also entitled to an award based on an accounting of Defendant's profits measured by Defendant's sales because Defendant's conduct was willful and deliberate, Defendant was unjustly enriched, and an award of Defendant's profits is necessary to deter Defendant's future conduct.

143.   As this is an exceptional case, Defendant's acts have been knowing, intentional, wanton, and willful, and Edible is further entitled to enhanced damages and reasonable attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117.

144.   Pursuant to 15 U.S.C. § 1117, Edible is also entitled to its costs incurred in this action.

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

## COUNT THREE
### Federal Unfair Competition and
### False Designation of Origin or Sponsorship
### (Pursuant to 15 U.S.C. § 1125(a))

145.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

146.   Edible is the owner of all rights and title to, and has valid and protectable prior rights to, the EDIBLE Marks.

147.   By its acts alleged previously, Defendant has engaged, and is engaged, in federal unfair competition, false designation of origin, and palming off to willfully misappropriate and trade off the immense strength and goodwill associated with the EDIBLE Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), causing irreparable injury to Edible and the public.

148.   Defendant has knowingly used, and continues to use, in U.S. commerce the asserted EDIBLE Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the food and gift goods and services that Defendant advertises, promotes, and offers for use on Defendant's EDIBLES Website.

149.   Defendant's unauthorized use of the EDIBLE Marks as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant and Edible and/or Defendant's goods and services and Edible's goods and services.

150.   Further, Defendant's unauthorized use of the Edible Marks as alleged above is likely to cause such people to believe in error that Defendant's goods and services have been authorized, sponsored, approved, endorsed, or licenses by Edible or that Defendant is in some way affiliated with Edible.

151.   In addition, Defendant's unauthorized use of the Edible Marks as alleged above constitutes palming off, that is, Defendant's sale or attempt to sell Defendant's products or services under Edible's EDIBLE Marks by inducing buyers to believe that Defendant's products are services are actually the products or services of Edible.

152.   Defendant's acts constitute false designations of the origin and/or sponsorship of Defendant's goods, unfair competition, and palming off in violation of 15 U.S.C. § 1125(a).

153.   Edible has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's conduct is allowed to continue.

154.   As a direct and proximate result of Defendant's conduct, Edible has suffered irreparable harm to the valuable EDIBLE Marks.  Unless Defendant is permanently restrained from further infringement of the EDIBLE Marks, Edible will continue to be irreparably harmed.

155.   As a result of Defendant's acts, Edible has sustained actual damages to its business, marks, goodwill, and reputation proximately resulting from Defendant's wrongful acts and is entitled to recover three times the amount of its actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117.

156.   In addition to Edible's actual damages, pursuant to 15 U.S.C. § 1117, Edible is also entitled to an award based on an accounting of Defendant's profits measured by Defendant's sales because Defendant's conduct was willful and deliberate, Defendant was unjustly enriched, and an award of Defendant's profits is necessary to deter Defendant's future conduct.

157.   As this is an exceptional case, Defendant's acts have been knowing, intentional, wanton, and willful, and Edible is further entitled to enhanced damages and reasonable attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117.

158.   Pursuant to 15 U.S.C. § 1117, Edible is also entitled to its costs incurred in this action.

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

## COUNT FOUR
### Georgia Common Law Trademark and Service Mark Infringement

159.   Edible realleges and incorporates the preceding paragraphs 1 to 102.

44

160.   This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

161.   By its acts mentioned previously, Defendant has engaged, and is engaged, in common law trademark and service mark infringement of the EDIBLE Marks under Georgia law through Defendant's promotion, advertising, and marketing, and offer of overlapping food and gift related goods on the EDIBLES Website.

162.   Edible has suffered injury-in-fact and/or actual damages caused by Defendant's common law trademark infringement and service mark infringement.

163.   Edible seeks Defendant's ill-gotten gains measured by the profits of Defendant's wrongdoing.

164.   Edible also seeks reasonable attorney's fees and costs.

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

## COUNT FIVE
## Georgia Common Law Unfair Competition

165.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

166.   This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

167.   By its acts aforesaid, Defendant has engaged, and is engaged, in common law unfair competition under Georgia law.

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

## COUNT SIX
### Violation of the Georgia Uniform Deceptive Trade Practices Act
### (Pursuant to O.C.G.A. § 10-1-370, *et seq.*)

168.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

169.   This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

170.   The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), O.C.G.A. § 10-1-370, *et seq.* prohibits deceptive trade practices, which include passing off goods or services as those of another, § 10-1-372(a)(1); causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; § 10-1-372(a)(2); causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; § 10-1-372(a)(3); and engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. § 10-1-372(a)(12).

171.   Defendant, by its acts alleged previously, has engaged, and is engaging in deceptive trade practice in the course of its business by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Edible; and engaging other conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of the Georgia UDTPA, § 10-1-372(a)(1), (2), (3), and (12).

172.   Edible has been damaged and is likely to be damaged further by Defendant's deceptive trade practices, and Edible is therefore entitled to the grant of a permanent injunction against Defendant under the principles of equity and on terms that the Court considers reasonable pursuant to O.C.G.A.§ 10-1-373(a).

173.   Edible is entitled to its costs and a discretionary award of attorney's fees due to Defendant's willful engagement in trade practices knowing them to be deceptive pursuant to O.C.G.A. § 10-1-373(b)(2).

WHEREFORE, Edible demands judgment against Defendant as set forth in the Prayer for Relief.

## COUNT SEVEN
### Cancellation of Federal Trademark Registration No. 4857834
### (Pursuant to 15 U.S.C. § 1119)

179.   Edible re-alleges and incorporates the preceding paragraphs 1 to 102.

180.   Defendant has filed for and received U.S. Registration No. 4857834 for the service mark "EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE" (hereafter the "EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark") filed on the Principal Register in Class 45 for "Personal gift selections for others, namely, recommending and providing information on appropriate gifts for moms, dads, spouses, children, and friends." That registration issued November 24, 2015.

181.   Defendant filed to register the EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a), asserting a first use date of October 15, 2014 and a first use in commerce of October 15, 2014.

182.   Section 45 of the Lanham Act, 15 U.S.C. § 1064 provides for the filing of a petition to cancel "a registration of a mark" including abandonment when its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse of a mark for at least three

consecutive years, shifts to the trademark owner the burden to show that it was using the mark or that it had an objective intent to resume use.

183.   On information and belief, Defendant has failed to exercise continuous use of the EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark since November 24, 2014.

184.   On information and belief, as of today, and for at least the last three several years, Defendant has failed to make any use in commerce of the EDIBLES: PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark in connection with any bona fide goods or services of Defendant, including personal gift selections for others, namely, recommending and providing information on appropriate gifts for moms, dads, spouses, children, and friends, and has no intent to resume use, including at least because Defendant has altered the Disputed Domain <www.edibles.com> that once related to gifts to now relate to the sham EDIBLES App.

185.   On information and belief, Defendant does not have any bona fide future plans to use the EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark for the services listed in the registration.

186.   Defendant has abandoned its rights to the EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark.

187.   Edible has a real interest and direct and personal stake in the outcome of this cancellation claim and a reasonable basis in fact for its belief that Edible is or will be damaged by the continued existence of U.S. Registration No. 4857834 for the EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE Mark and has standing to bring this cancellation claim.

188.   Edible currently owns valid and subsisting registrations for the EDIBLE Marks to which Defendant's mark in U.S. Registration No. 4857834 is confusingly similarly.

189.   A likelihood of confusion between one or more of Edible's prior EDIBLE Marks on the one hand and Defendant's U.S. Registration No. 4857834 for EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE on the other hand in that the "Edible" formative content of the marks is virtually identical, and "edible" and "edibles" have the same connotation, and the goods and services identify by the marks are closely related.  Because Edibles owns senior prior rights in its marks, Defendant's Registration violates Edible's trademark rights under 15 U.S.C. § 1052(d).

190.   Furthermore, Edible has a reasonable belief that Defendant can use and would use the mark in U.S. Registration No. 4857834 to block registration of Edible's applications for related goods and services or that its applications for other EDIBLE formative marks will be refused because of Defendant's registration.

191.   Edible is engaged in the sale of the same or related products or services, namely the food gifting business, which is the same business and competes with the services listed in the application for Defendant's U.S. Registration No. 4857834 and Edible has an interest in using the term in its business.

192.   U.S. Registration No. 4857834 should be cancelled in accordance with 15 U.S.C. §§ 1119, 1052(d), and 1064.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Edible demands a trial by jury on all claims and issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Edible prays:

A.      That the Court award Judgment in Edible's favor against Defendant on all counts of the Complaint, and that Edible receive all such relief, including, permanent injunctive, monetary, and other relief sought hereunder;

B.      For, on the domain name piracy claim (Count One), an award to Edible of (a) an order against Defendant forfeiting and transferring the Disputed Domain <www.edibles.com> to Edible pursuant to 15 U.S.C. § 1125(d)(1)(C); three times actual damages resulting from Defendant's domain name piracy in an amount to be proven at trial, or in the alternative, statutory damages in the amount of $100,000 for the Disputed Domain <www.edibles.com>; and; Defendant's profits measured by its sales to be enhanced, as the Court shall find to be just.

C.      That Edible be granted injunctive relief on Counts One through Six of the Complaint, under 15 U.S.C. § 1116(a) and O.C.G.A. § 10-1-373(a), and Georgia common law, and that Defendant and those additional parties specified in Federal Rule of Civil Procedure 65(d) be permanently enjoined from continued infringement, unfair competition, false designation of origin, palming off, and

deceptive trade practices with respect to Edible's intellectual property rights, including the EDIBLE Marks, by way of:

(a)     registering, marketing, offering, distributing any goods or services under or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to Edible's EDIBLE Marks;

(b)     using the Disputed Domain <www.edibles.com> or any other infringing domain name and assigning and transferring <www.edibles.com> to Edible;

(c)     otherwise infringing upon Edible's EDIBLE Marks or using any other trademarks or service marks that are confusingly similar to the EDIBLE Marks or making any unlawful use of the Edible Marks; and

(d)     otherwise unfairly competing with Edible or engaging in any false designation of origin, or palming off, false advertising, or in any deceptive trade practice, or otherwise trading off of Edible's reputation or goodwill, or injuring Edible's reputation or performing any act which is likely to lead members of the consuming public to believe that any goods or services made, provided by, distributed, promoted, advertised, marketed,

offered, offered for sale, or sold by Defendant is in any matter associated or

connected with Edible or its franchisees, or is licensed, sponsored, approved,

or authorized by Edible;

D.      For an order directing Defendant to file with this Court and serve

upon Edible within thirty (30) days after service of the injunction, a report in

writing, under oath, setting forth in detail the manner and form in which Defendant

has complied with, and will continue to comply with, the injunction and further

orders of this Court, pursuant to 15 U.S.C. § 1116;

E.      For, on Counts One, Two, Three, Four, Five, and Seven, an award of

three times Edible's actual damages in accordance with Section 35(a) of the

Lanham Act, 15 U.S.C. § 1117(a), in an amount to be proved at trial;

F.      For, on Counts One, Two, Three, Four, Five, and Seven, an

accounting of all profits realized by Defendant in the measure of its sales, to be

enhanced for such additional sum as the Court shall find to be just, which shall

constitute compensation, in accordance with Section 35(a) of the Lanham Act, 15

U.S.C. § 1117(a) in an amount to be proved at trial;

G.      That, on Count Seven, Defendant's federal registration for the mark

"EDIBLES:  PERSONAL GIFTS FOR PEOPLE IN YOUR LIFE, Registration

54

No. 4857834, be cancelled in accordance with 15 U.S.C. §§ 1119, 1052(d), and 1064;

H.     For an award of punitive damages, pursuant to O.C.G.A. § 51-12-5.1, on Count Five of the Complaint for common law unfair competition, in an amount sufficient to punish Defendant and deter such willful misconduct in the future;

I.     For an award of reasonable attorney's fees and costs, on all counts of the Complaint, as this is an exceptional case and Defendant's purposeful wrongdoing and willful conduct warrant the recovery by Edible of such pursuant to 15 U.S.C. § 1117(a), O.C.G.A. § 10-1-373(b), and Georgia common law;

J.     An award of prejudgment and post-judgment interest; and

K.     Such other and further relief as the Court deems proper.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

This 5th day of August 2020.

Respectfully submitted,

By: /s/ *John M. Bowler*
John M. Bowler
Georgia Bar No. 071770
Lindsay Mitchell Henner
Georgia Bar No. 272310

Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2216
Tel: (404) 885-3000
john.bowler@troutman.com
lindsay.henner@troutman.com

*Attorneys for Plaintiffs Edible IP, LLC and Edible Arrangements LLC*