UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Edible IP, LLC and Edible Arrangements, LLC,<br><br>*Plaintiffs-Counter Defendants*,<br><br>-v.-<br><br>World Media Group, LLC,<br><br>*Defendant-Counter Claimant*. | Civil Action File No: 3:20-cv-19178-MAS-LHG<br><br>Michael A. Shipp, U.S.D.J.<br>Lois H. Goodman, U.S.M.J. |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR LEAVE TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 2

    a.    World Media's Trademark Trial and Appeal Board Opposition .......................... 2

    b.    Edible's Northern District of Georgia Lawsuit Against World Media ................. 3

    c.    Following Transfer of Edible's Lawsuit Against World Media to this
        Court ............................................................................................... 7

III.  LEGAL STANDARD ..................................................................................... 14

IV.   ARGUMENT ................................................................................................. 15

    a.    World Media Fails to Show Good Cause for its Belated Amendment ............... 16

    b.    World Media Ignores Excusable Neglect and Thus Forfeits the Point .............. 17

    c.    Even the Rule 15 Standards Counsel Against Amendment Here ....................... 18

        i.    World Media's Proposed Amendment is Futile........................................ 19

            1.    World Media's bad faith new proposed counts are frivolous
                on their face and fail to state a claim. ......................................... 19

            2.    World Media's Answers to Edible's Complaint establish an
                irreconcilable discrepancy with its proposed new claims. ........... 22

        ii.   World Media's Proposed Amendment is Untimely, Prejudicial, and
            Made in Bad Faith................................................................... 23

V.    CONCLUSION............................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ...........................................................................................19

*Cap. Health Sys., Inc. v. Veznedaroglu*,
No. CV158288MASLHG, 2019 WL 6324006 (D.N.J. Nov. 26, 2019) ............................16, 23

*Componentone, L.L.C. v. Componentart, Inc.*,
No. 02: 05CV1122, 2007 WL 2580635 (W.D. Pa. Aug. 16, 2007)........................................15

*Cornell Capital Partners, L.P. v. Cubley*,
No. 03-1860 (WGB), 2005 U.S. Dist. LEXIS 53712 (D.N.J. Feb. 10, 2005) ........................25

*Dimensional Communs., Inc. v. Oz Optics, Ltd.*,
148 Fed. Appx. 82 (3d Cir. 2005) .............................................................................17

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
No. 15-7025 (RBK/JS), 2018 U.S. Dist. LEXIS 92739 (D.N.J. May 31, 2018) ..............15, 18

*Graham v. Progressive Direct Ins. Co.*,
271 F.R.D. 112 (W.D. Pa. 2010) .............................................................................17

*Korrow v. Aaron's, Inc.*,
300 F.R.D. 215 (D.N.J. 2014)........................................................................14, 15, 16

*Levine v. Fin. Freedom*,
No. CV184127MASLHG, 2018 WL 6492872 (D.N.J. Dec. 10, 2018)...................................19

*Masonpro, Inc. v. Mason Pro One, LLC*,
No. 21-01941 (KM)(ESK), 2022 U.S. Dist. LEXIS 3429 (D.N.J. Jan. 7, 2022)....................20

*Morse/Diesel, Inc. v. Fidelity & Deposit Co.*,
763 F. Supp. 28 (S.D.N.Y. 1991) ........................................................................22, 23

*Premier Comp Sols., LLC v. UPMC*,
970 F.3d 316 (3d Cir. 2020)...............................................................................15, 18

*Scott v. Vantage Corp.*,
336 F. Supp. 3d 366 (D. Del. 2018), *aff'd*, 845 F. App'x 170 (3d Cir. 2021) ........................17

*Sheeran v. Blyth Shipholding S.A.*,
No. 14-5482, 2015 U.S. Dist. LEXIS 168019 (D.N.J. Dec. 16, 2015)...................................20

*Wakefern Food Corp. v. Marchese*,
No.: 2:20-cv-15949-WJM-MF, 2021 U.S. Dist. LEXIS 161661 (D.N.J. Aug.
26, 2021) ................................................................................................19, 20

**Other Authorities**

Fed. R. Civ. P. 6.................................................................................................................15, 18

Fed. R. Civ. P. 8.......................................................................................................................20

Fed. R. Civ. P. 11...................................................................................................................1, 22

Fed. R. Civ. P. 15(a)............................................................................................................14, 18

Fed. R. Civ. P. 16(b)................................................................................................15, 16, 17, 18

Plaintiffs Edible Arrangements, LLC and Edible IP, LLC ("Edible") hereby respond in opposition to Defendant World Media Group, LLC's ("World Media") Motion to Amend its Answer and Counterclaims.

## I.    INTRODUCTION

For over a year, World Media has been telling this Court, in response to Edible's affirmative claims, that there is no likelihood of confusion between and Edible's trademarks and World Media's uses of the EDIBLES mark on a mobile application and website and that the case should actually be focused on World Media's speculative future plans to use the EDIBLES mark to sell cannabis products. Yet, in World Media's proposed new pleading, World Media itself purports to adopt Edible's assertions that there is commonality and confusion between World Media's use of the EDIBLES mark for <u>non-cannabis</u> goods and Edible's use of its own trademarks for its core products. This shift is so logically inconsistent with every position World Media has taken to date that it begs the question of why World Media would be willing to, in effect, concede the merits of Edible's affirmative likelihood of confusion claims. The answer is obvious – to create retaliatory leverage over Edible with new litigation costs and delay after a failed mediation.

World Media's proposed new claims against various of Edible's mobile applications (the "Edible Arrangements App", "Edible Go! App" and "Edible Convention App") are frivolous on the merits, including because there are zero factual allegations in the pleading that could state plausible claims and instead only regurgitation of the legal standards. World Media's own proposed pleading proffers images of the Edible Go! App and Edible Convention App that establish on their face that the apps are exclusively for Edible employees and <u>are not offered</u> to the consuming public at all for any purpose. Without ordinary consumers, there can be no likely consumer confusion and no trademark infringement. Were the proposed pleading filed in its current state, it so fails to lodge plausible allegations that it raises Rule 11 and sanctions questions.

Yet, the Court need not even reach the merits of the proposed amendment, because World Media has failed to establish good cause to amend. The only basis for "good cause" that World Media asserts is that it only "recently" discovered Edible's mobile applications. This is demonstrably false as to the Edible Arrangements App in particular, and even if it were true, would only otherwise establish World Media's extreme negligence in conducting due diligence and reviewing discovery materials in this case. World Media's claims against the Edible Go! App and Edible Convention App are so frivolous that it is irrelevant when World Media learned of them, but the suggestion World Media learned of those apps recently is equally as dubious.

World Media had more than sufficient reason to know of Edible's mobile applications for over a year and a half and had specific exposure to the existence of the Edible Arrangements App more than thirty times. World Media has not even attempted to argue its required showing of excusable neglect, but there would be no excuse for the same reasons. For all of these reasons, World Media's belated and contrived motion to amend its answer and counterclaims for a second time should be denied.

## II.   FACTUAL BACKGROUND

### a.   World Media's Trademark Trial and Appeal Board Opposition

The parties' litigation history began on July 16, 2020, when World Media filed Trademark Office Opposition Proceeding No. 91263666 seeking to prevent Edible from registering the trademark EDIBLE for nutritional supplement goods. Declaration of John M. Bowler ("Bowler Decl."), ¶ 2, Ex. 1. At the time that World Media filed the Opposition, Edible's challenged application, Serial No. 88480402, had gone through prosecution at the Trademark Office, including exchanges of information with the Examiner assigned to the file. Bowler Decl., ¶ 3, Ex. 2. A January 26, 2020, submission including images disclosing the existence of the Edible Arrangements App is in that publicly available file, which presumably World Media's counsel

reviewed for the purposes of due diligence in deciding to challenge the file:



Bowler Decl., ¶ 4, Ex. 3, p. 18.

From the very outset of the litigation timeline, then, it strains credulity to assert that World Media did not discover the Edible Arrangements App while investigating trademark claims in the "nutrition" space in which World Media's EDIBLES app currently exists. Because of overlapping issues with the instant case, the Trademark Office has stayed the Opposition proceeding.

### b.    Edible's Northern District of Georgia Lawsuit Against World Media

On August 5, 2020, Edible filed its Complaint against World Media in the Northern District of Georgia (Dkt. 1) asserting that World Media's use of the name EDIBLES on its website and mobile application constitutes an infringement of Edible's prior trademark rights. On November 13, 2020, instead of filing an answer to the Complaint in the Georgia Court, World Media submitted a Motion to Dismiss or Transfer in the Alternative ("Motion to Dismiss") to this Court, in the District of New Jersey. Dkt. 10. In support of the Motion to Dismiss, World Media submitted a declaration from one of its owners, Gerald Gorman, and a declaration with attached exhibits from World Media's litigation counsel. Bowler Decl., ¶¶ 4-6, Exs. 4-5.

Mr. Gorman's declaration asserted, among other things, that (i) World Media's websites

-3-

include links to the Apple App Store and the Google Play Store that allow users to download their EDIBLES app, (ii) the EDIBLES app is free, (iii) the EDIBLES app has only been downloaded 423 times through Apple and less than 100 times through Google Play, (iv) the EDIBLES website <www.edibles.com> was previously a parked page that earned minimal revenue, and (v) World Media has earned less than $100 in total worldwide revenue from the EDIBLES app. Bowler Decl., Ex. 4. Today, World Media's EDIBLES website continues to display links to the Apple App Store and Google Play Store for downloading the EDIBLES app, as shown below:



Bowler Decl., ¶ 9, Ex. 8.

World Media's counsel's declaration attached several incomplete screenshots of Plaintiff Edible's website (Bowler Decl., ¶¶ 7-8, Exs. 6-7), demonstrating that World Media had reviewed multiple pages of Edible's website at least as early as November 13, 2020. A complete printout from each Edible webpage cited in World Media's Motion to Dismiss exhibits is attached hereto. Bowler Decl., ¶¶ 10-11, Exs. 9-10. Although cut out from World Media's Motion to Dismiss

exhibits, both webpages actually include the following content referencing the Edible Arrangements App and showing it available for download in the Google Play Store and Apple App Store using icon imagery similar to that on World Media's EDIBLES webpage above:



*Id.*

Edible also produced documents to World Media in discovery showing that Edible's website has reflected the above app store links since before World Media filed its Trademark Office Opposition Proceeding against Edible in July of 2020. Bowler Decl., ¶ 12, Ex. 11 (2019 archival website capture). Therefore, when World Media's counsel was collecting the captures attached to his motion to dismiss declaration in November of 2020, he would have encountered these app store links and "Mobile App" reference in the portion cut off from his printouts. He also would have been able to access the same mobile application "advertisement" presented as new in World Media's proposed amended answer and counterclaims:



Dkt. 52-2, Counterclaims ¶ 17 (ediblearrangements.com/mobile-app/). This is the page that populates after clicking the "Mobile App" link shown above. Bowler Decl., ¶ 13. Further still, if either World Media or its counsel visited Edible's webpage on a mobile device, they would have been prompted with a link to download the Edible Arrangements App. Bowler Decl., ¶ 15, Ex. 13.



World Media would have had reason to know about any and all of the foregoing for at least the four months between its filing of the nutrition-related Trademark Office Opposition and its filing of the motion to dismiss this case.

### c.   Following Transfer of Edible's Lawsuit Against World Media to this Court

On January 13, 2021, following transfer of this case by stipulation to the District of New Jersey, World Media filed an Answer and Counterclaim for declaratory judgment of non-infringement. *See* Dkt. 26. For the reasons identified above, World Media would have at this time had reason to know of the Edible Arrangements App for six months or more but did not raise any related counterclaims or defenses. *See supra*. On June 25, 2021, then having reason to know of the Edible Arrangements App for eleven months or more, World Media filed an Amended Answer and Counterclaims (*See* Dkt. 25) adding claims of invalidity and cancellation against Edible trademarks, which also reveal the existence of the Edible Arrangements App in their prosecution history:

For Edible's Registration No. 4,319,940, a 2018 declaration of use and incontestability includes images of app store icons <u>five times</u>. Bowler Decl., ¶ 16, Ex. 14. For example:



Bowler Decl., Ex. 14 at p. 9.

For Edible's Registration No. 6,008,992, a specimen of use shows images of the app store icons for the Edible Arrangements App <u>four times</u>. Bowler Decl., ¶ 17, Ex. 15. For example:



Bowler Decl., Ex. 15 at p. 5.

Therefore, sometime between January and June of 2021, World Media's counsel conducted additional specific due diligence as to Edible's trademarks to identify a basis to challenge them by addition to an amended answer in this case and would have again encountered these images. That World Media <u>still</u> would not have known of the Edible Arrangements App following this investigation specifically for the purpose of identifying bases for counterclaims is increasingly more suspect. And all of the foregoing activity predates the exchange of discovery documents in this case that further establishes World Media's access to the existence of the Edible Arrangements App for a significant period of time.

On July 13, 2021, World Media made a document production to Edible that included imagery identifying how World Media's EDIBLES app appears in the Apple App Store when searching for the word "Edibles" on a phone.



Bowler Decl., ¶ 18, Ex. 16 (World Media's EDIBLES App prior to logo update). In reality, when

a user searches for "Edibles" in the Apple App Store, the <u>Edible Arrangements</u> App appears first,

and users must scroll past it to see World Media's EDIBLES app for download.



First Results                      51st Result

-9-

Bowler Decl., ¶¶ 19-20, Exs. 17-18 (also showing the Edible Go! App). The same is true in the Google Play Store:



Bowler Decl., ¶ 21, Ex. 19 (also showing the Edible Go! App on the same page).

Thus, when World Media or its counsel search for World Media's own EDIBLES app in the Google Play and Apple App Stores, they also <u>first</u> encounter the Edible Arrangements App. To avoid any appearance of gamesmanship-based delay, World Media and its counsel would need to provide sworn testimony that after the litigation began (or perhaps even earlier), somehow none of them searched for World Media's EDIBLES app until recently, because otherwise they would have immediately encountered <u>at least</u> the Edible Arrangements App. Any testimony conveniently submitted with World Media's reply brief would be procedurally improper but also uncompelling given the consequences of its failure to support its opening brief assertions in the first instance.

Even if World Media were to claim no one searched for either party's apps prior to 2022,

World Media still cannot plausibly disclaim knowledge of the Edible Arrangements App. On August 19, 2021, Edible made a document production to World Media that included the same or similar imagery of the Google and Apple app store icons for the Edible Arrangements App at least eighteen (18) more times, including the following:



Bowler Decl., ¶ 22, Ex. 20. On November 23, 2021, Edible made another document production to World Media that included, for example, the following callouts of the Edible Arrangements App launch and marketing content referencing and showing the Edible Arrangements App on a phone:



Bowler Decl., ¶ 23-24, Exs. 21-22

Despite citing written discovery as failing to "disclose" the Edible Arrangements App,

World Media's interrogatories <u>did not even ask</u> for an identification of Edible's trade channels. Whether asked or not, such an interrogatory would not have called for identification of the Edible Go! App and Edible Convention App because they are not used for consumer trade. Instead, World Media asked for an identification of <u>persons with knowledge</u> about Edible's sales and marketing. Bowler Decl., ¶ 25, Ex. 23 (Interrogatory No. 3 and Response). Edible identified three people, <u>none of whom</u> are the two deposition witnesses that World Media also cite as failing to disclose the Edible Arrangements App. *Id.* (identifying Tariq Farid, Somia Farid, and Laura Rueckel).

The first deponent, former employee Stephen Thomas, testified for less than an hour and a half and was shown only his subpoena and a third party website screenshot. Bowler Decl., ¶ 26, Ex. 24. The second deponent, Paul Bundonis, testified for just over an hour and half but worked for a separate business, Incredible Edibles, that is not a named party to this case on a different brand that has not advertised or been sold on the Edible Arrangements App. Bowler Decl., ¶ 27, Ex. 25. Regardless, World Media's counsel <u>did not ask either deponent</u> to identify Edible's channels of trade or ask them questions about Edible's mobile applications. Bowler Decl., ¶ 28.

Unlike Mr. Thomas, World Media's counsel showed Mr. Bundonis several somewhat more substantive exhibits including printouts from the Edible webpage. Curiously, however, the Google Play Store and Apple App Store logos—which certainly were on the Edible webpage at that time in November 2021—are distinctly <u>missing</u> from the printouts prepared by World Media's counsel for the deposition, though the rest of the page appears correct:



Bowler Decl., ¶ 29, Ex. 26.



Bowler Decl., ¶ 30, Ex. 27. Edible's document production predating these depositions by months included screenshots of both the Edibles® subpage and the Incredible Edibles™ arrangement from May of 2021 with the Google Play and Apple App Store logos shown. Bowler Decl., ¶¶ 31-32, Exs. 28-29. World Media's counsel did not use these Bates labeled printouts in the deposition.

To the extent the above discussion more extensively refers to the Edible Arrangements App rather than the Edible Go! App and Edible Convention App, the claims against those apps are so frivolous that whether and when World Media became aware of them is irrelevant. They are both underline internal employee and franchisee apps that are not offered to consumers at all, one of which was for use at a singular in-house convention event in 2019, and the other of which is a tool for Edible delivery drivers.

-13-



Dkt. 52-2, ¶¶ 20-21.

On January 11, 2022, the parties held a formal mediation, wherein World Media first raised the possibility of filing its own lawsuit against Edible. On January 18, 2022, only after mediation failed, World Media filed a separate complaint in the District of New Jersey (Case No. 3-22-cv-00216) for trademark infringement against Edible's mobile applications.

## III.    LEGAL STANDARD

World Media was permitted to amend its Answer and Counterclaims once within twenty-one days of serving it or following a responsive pleading, Fed. R. Civ. P. 15(a)(1)(A), without obtaining leave of the court or consent from Edible. Fed. R. Civ. P. 15(a)(1)(B). After that point, World Media became obligated to obtain either leave of the court or written consent from Edible (which Edible did not provide) before amending. Fed. R. Civ. P 15(a)(2); *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 219 (D.N.J. 2014).

Because the Scheduling Order deadline to amend (June 25, 2021)[1] has long passed, World

---

[1]Dkt. 33, p. 1.

Media's request for leave to amend "must be evaluated under the stricter standard specified in Rule 16(b)," which requires a showing of "good cause" to modify a case deadline. *Componentone, L.L.C. v. Componentart, Inc.*, No. 02: 05CV1122, 2007 WL 2580635, at *1 (W.D. Pa. Aug. 16, 2007); *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[W]hen a party moves to amend . . . after the deadline in a district court's scheduling order has passed, the "good cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies.").

Because World Media filed its belated motion to amend after the expiration of the amendment deadline, the request is further subject to Fed. R. Civ. P. 6(b)(1)(b), under which the Court may extend a deadline for good cause "after the time has expired if the party failed to act because of excusable neglect." Thus, World Media's motion "must meet the good cause <u>and</u> excusable neglect standards to be granted." *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-7025 (RBK/JS), 2018 U.S. Dist. LEXIS 92739, at *8 (D.N.J. May 31, 2018) (emphasis added).

Even if World Media could show good cause and excusable neglect, which it cannot, the Court may still deny the motion to amend on the grounds of "undue delay, bad faith, dilatory motive, unfair prejudice or futility of amendment." *Korrow*, 300 F.R.D. at 219. As set out herein, aside from being frivolous on the merits, World Media's motion smacks of bad faith, attempt to delay, and intended prejudice to Edible.

## IV.    ARGUMENT

World Media's proposed new pleading is riddled with flaws and submitted for the fundamentally improper purpose of retaliating against Edible following a failed mediation. World Media has not and cannot show good cause to amend at this belated juncture. Even if it could show good cause, the underlying pleading is frivolous, irreconcilable with its positions in the case to date, and fails to state plausible claims for relief. For all of these reasons, addressed in turn below, the Court should deny World Media's belated motion to amend its answer and counterclaims.

      **a.**      **World Media Fails to Show Good Cause for its Belated Amendment**

To demonstrate good cause for its untimely motion, World Media must show that it has been diligent in pursuing the amendment. Fed. R. Civ. P. 16(b)(4); *Cap. Health Sys., Inc. v. Veznedaroglu*, No. CV158288MASLHG, 2019 WL 6324006, at *8 (D.N.J. Nov. 26, 2019) ("A party seeking to amend pleadings is 'required to diligently seek amendments when they acquired enough facts to support such amendments.'") (citations and internal quotations omitted). "Specifically, to demonstrate 'good cause' pursuant to Rule 16, the moving party must show that, despite its diligence, the deadlines set forth in the scheduling order could not reasonably be met." *Korrow*, 300 F.R.D. at 220. World Media does not meet this standard.

World Media's allegation that it only "recently became" aware of Edible's mobile applications (Br. p. 2) is demonstrably false, particularly as to the Edible Arrangements App, and is not supported by any sworn testimony from World Media or its counsel on the operative assertions. World Media knows how to prepare and submit client and attorney affidavits attesting to facts in support of a motion, as it did for its prior motion to dismiss or transfer. The absence of such testimony here is telling. The record shows that it is almost <u>impossible</u> that World Media and its counsel failed to learn of the Edible Arrangements App following more than thirty exposures in the context of litigation with Edible, and a yet unknown number of times searching app stores for their own EDIBLES app, beginning as early as July 2020 – over a year and a half ago.

What World Media claims was "not disclosed" in discovery about the Edible Arrangements App and other Edible mobile applications is of World Media's own making. World Media did not serve an interrogatory on trade channels. Bowler Decl. Ex. 23. World Media did not depose witnesses identified as having such knowledge. *Id*. World Media did not ask questions about Edible's trade channels or mobile applications during the depositions that it did take. Bowler Decl. ¶ 28. Any attempt to pass the buck to Edible on World Media's alleged, but extremely dubious,

lack of knowledge is without merit. World Media had every reason to know about the Edible Arrangements App from the time it first challenged Edible's trademarks in the "nutrition" space before the Trademark Trial and Appeal Board. However, it did nothing until mediation in this case did not go the way that it wanted and a plaintiff's suit could potentially create leverage in World Media's favor.

Courts have repeatedly held that a party that has unexplained, long delays fails to meet its burden under Rule 16. *See Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 377 (D. Del. 2018), *aff'd*, 845 F. App'x 170 (3d Cir. 2021) (finding unreasonable delay and no good cause where the facts were known by the plaintiffs for months before the motion for leave was filed); *Graham v. Progressive Direct Ins. Co*., 271 F.R.D. 112, 119 (W.D. Pa. 2010) (holding a plaintiff did not diligently pursue their proposed claims after an eight month delay after the deadline to file for an amendment to the pleadings); *Dimensional Communs., Inc. v. Oz Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005) (explaining that a "district court's determination that a failure to satisfy Rule 16(b)'s 'good cause' requirement was sufficient to deny a motion to amend filed six months after the deadline for amendments to pleadings"). There is no good cause here for either (i) knowing about the Edible Arrangements App for a year and a half or more without bringing a counterclaim, or (ii) for World Media not conducting enough basic diligence and review to identify the readily available to the public Edible Arrangements App information in front of it for the same amount of time or more. The motion to amend to add a counterclaim at this juncture should be denied.

    **b.**    **World Media Ignores Excusable Neglect and Thus Forfeits the Point**

Courts evaluate five factors when evaluating excusable neglect: "1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete

lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance." *Eagle View Techs., Inc.*, 2018 U.S. Dist. LEXIS 92739 at *9 (quotation omitted).

> The Supreme Court has explained that the "excusable neglect" inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including, "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (citation omitted). World Media's motion does not even attempt to argue that the requirements of Rule 6 of the Federal Rules of Civil Procedure have been met. *Id.* at *8 (holding that in order to grant a motion to amend the pleadings after the deadline, a "defendant[] must meet the good cause and excusable neglect standards to be granted").

In fact, World Media's motion does not address the above factors at all. When a party fails to discuss a standard in its motion, the district court is "entitled to find [the defendant] forfeited its argument" and does not have to reconsider its argument in "subsequent reply briefs." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (denying a motion to amend when a party failed to address good cause standard in its initial motion and finding that the party forfeited its argument under Rule 16(b)(4)). World Media's motion to amend should be denied for this reason alone.

### c.    Even the Rule 15 Standards Counsel Against Amendment Here

The Court may disregard World Media's Rule 15(a) arguments altogether because World Media has not established good cause under Rule 16(b) for seeking to amend after the June 25, 2021, deadline set forth in the Case Management and Scheduling Order. *Dimensional Commc'ns*, 148 F. App'x at 85. However, even if the Court reaches Rule 15 standards, the Court has the discretion to deny the motion to amend where, as here, it is apparent from the record that World

Media has demonstrated "(1) . . . undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Levine v. Fin. Freedom*, No. CV184127MASLHG, 2018 WL 6492872, at *2 (D.N.J. Dec. 10, 2018). World Media's proposed new claims are all three – frivolous and futile, prejudicial, and made in obvious bad faith.

### i.     World Media's Proposed Amendment is Futile

World Media's proposed amendment is perhaps sanctionably futile for at least two distinct reasons, each of which independently forecloses World Media's claims against Edible and the newly named additional defendants. First, World Media's claims are unsupported by any factual allegations, outright frivolous on their faces, and slapped together with overreliance on "information and belief" because the necessary facts simply do not exist. Second, World Media's claims are foreclosed by its own irreconcilable answers in response to Edible's Complaint.

### 1.     World Media's bad faith new proposed counts are frivolous on their face and fail to state a claim.

To support its new claims, World Media would be required to plausibly plead "(1) the mark at issue is valid and legally protectable; (2) the mark is owned by [World Media]; and (3) [Edible's] use of the mark is likely to cause confusion among consumers as to the origin of the goods or services at issue." *Wakefern Food Corp. v. Marchese*, No.: 2:20-cv-15949-WJM-MF, 2021 U.S. Dist. LEXIS 161661, at *7 (D.N.J. Aug. 26, 2021). Aside from noting the mere existence of the Edible Arrangements, Edible Go!, and Edible Convention Apps in the Apple App Store, World Media does nothing other than regurgitate conclusory legal standards for its proposed new claims. Dkt. 52-2, ¶¶ 17-24, 53-70. There are zero other factual allegations because the proposed new claims are frivolous and solely retaliatory.

It is black letter law "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state any claim. *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1953 (2009). The proposed pleading is also a classic shotgun pleading failing to attribute any particular acts to any particular defendant, instead lodging sweeping, generalized allegations against all of the proposed defendants together as one. *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482 (JBS/AMD), 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) ("group pleading" fails Rule 8 where it "does not place Defendants on notice of the claims against each of them."). And, for the reasons set out below, World Media has no better facts to plead even if it were allowed to revise the draft that it submitted with its motion to amend.

Proving the sheer absurdity of World Media's proposed new claims, the apps alleged to be attributable to Netsolace and Edible Arrangements International show on their face in World Media's own proffered images that they are not available to the consuming public. *Masonpro, Inc. v. Mason Pro One, LLC*, No. 21-01941 (KM)(ESK), 2022 U.S. Dist. LEXIS 3429, at *4-5 (D.N.J. Jan. 7, 2022) (likelihood of confusion is when "ordinary consumers are likely to conclude that the marks used in commerce by the defendant and the plaintiff's registered marks identify a common source, affiliation, connection, or sponsorship" (emphasis added); *Wakefern*, 2021 U.S. Dist. LEXIS 161661 at *7 (finding plaintiff failed to state a claim because it failed to allege use in commerce). The Edible Convention App is, in title and excerpted content, for Edible Arrangements employees and franchises and clearly no longer displays substantive content, as it was for a single specific in-house company event held July 19-20, 2019. Dkt. 52-2, ¶ 20.



Likewise, the Edible Go! App shows indisputably that it is an <u>employee delivery driver tool</u> that is not available to the consuming public and is shown to be <u>passcode protected</u> ("Enter Employee Passcode"). Dkt. 52-2, ¶ 21.



World Media does not allege any factual basis for how these apps would cause confusion for either

side's customers, nor could it ever do so, because the proposed accused apps are not for customers.

World Media's proposed new pleading, if filed, would not only fail to state a claim but raises obvious Rule 11 questions and the specter of sanctions.

> **2.      World Media's Answers to Edible's Complaint establish an irreconcilable discrepancy with its proposed new claims.**

Even assuming World Media could state plausible new claims, its long-standing answers to Edible's claims are irreconcilable with its new allegations. Specifically, World Media has long denied that there is a likelihood of confusion between the parties' respective marks, goods, and services. World Media has, for example, <u>denied</u> the following:

> Because the EDIBLES mark promoted, advertised, and has been used by Defendant to offer goods and services is the equivalent of Edible's EDIBLE marks, the Defendant's EDIBLES mark should be deemed to create a likelihood of confusion.

Dkt. 52-2, Complaint ¶ 88 and response ("Denied.").

> Defendant's unauthorized use of the EDIBLE Marks as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant and Edible and/or Defendant's goods and services and Edible's goods and services.

Dkt. 52-2, Complaint ¶ 149 and response ("Denied.").

Now, to serve its retaliatory purposes, World Media proposes to plead the opposite. Namely, World Media's new proposed claims assert that, in fact, there is a likelihood of confusion between the parties' uses of their respective marks. Yet, World Media does not do so "in the alternative" to its prior answers, meaning that World Media plans to take directly contradictory positions at the same time in the litigation improperly. "There is an obvious discrepancy between [World Media's] answer and counterclaim[s]." *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 763 F. Supp. 28, 32-33 (S.D.N.Y. 1991). Although World Media had an opportunity to "voice uncertainty" in its answer through a "without knowledge or information sufficient to form a belief" response, it took a position that "has the effect of negating an essential element" of the new

proposed counterclaims and the counterclaims "cannot stand." *Id.*

> ### ii. World Media's Proposed Amendment is Untimely, Prejudicial, and Made in Bad Faith

The number of World Media's exposures to the existence of the Edible Arrangements App over the years in circumstances where World Media has specific reason to pay attention thereto shows at the very least extreme negligence, the burden of which Edible should not be required to bear. At worst, it shows that World Media brings its proposed amendment in obvious bad faith. In either case, the proposed amendment is extremely untimely, prejudicial to Edible, and dismissive of the impact on orderly and reasonably predictable litigation progress.

World Media distorts the prejudice analysis to meet its own ends while ignoring the actual harm to Edible and the case from the belated proposed amendment. First, World Media claims that Edible is not prejudiced because Edible has known for some time that World Media had an EDIBLES app and trademark. That is of no surprise—Edible specifically discusses World Media's EDIBLES app and mark in its Complaint. But knowing about the existence of those items is a far cry from placing Edible on notice of a trademark infringement counterclaim by World Media against Edible's mobile applications. The issue here is not Edible's awareness of World Media and its app, but that World Media knew of the Edible mobile applications forming the basis of its proposed "new" claim for a significant amount of time and did not bring a claim until it needed to shift momentum after a failed mediation. Although the "passage of time, without more, does not require that a motion to amend a complaint be denied[,] . . . at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cap. Health Sys.*, 2019 WL 6324006, at \*8 (holding that "[t]he prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery"). That point of creating undue burden is now, with a second amended

answer and counterclaims on known facts a full year and a half into the litigation.

The case that World Media relies on to support that there is no prejudice here illustrates the depth of its misunderstanding of the standards in a prejudice analysis. In *Smith v. Honeywell*, the Court analyzed whether it would be prejudicial to add a new plaintiff to a class action where plaintiffs share fundamentally the same interests and nothing significant about the premise of the case changes. 2014 U.S. Dist. LEXIS 9563, at *26-28 (D.N.J. Jan. 27, 2014). The equivalent here would be Edible joining its supply company Berry Direct as an additional plaintiff party to the suit. Instead, World Media proposes here a new affirmative claim for trademark infringement against Edible and affiliate companies (of whom no discovery has been taken) that Edible was not aware of when it crafted any of its discovery in the case and which requires a different focus and preparation of a new defense. The two circumstances share no parallels.

World Media may well feel its existing discovery covers its own interests, but any argument by World Media that Edible and the proposed new defendants are sufficiently covered by existing discovery is a self-serving and baseless assertion that allows World Media's counsel to decide what Edible needs for its defense of the claim. World Media's further assertion that it has already produced everything it needs to in this case for Edible's claims and related to World Media's proposed new infringement claim is outright false. The "ample information and documentation" World Media has produced is thousands and thousands of pages of software code and the entire nutritional database that the EDIBLES app pulls from, along with a mere <u>handful</u> of other documents. This is certainly not representative of the full scope of information Edible would seek from World Media in a defense, and Edible would also do its own investigation and collection of information to support its defense. Edible would, for example, also need to subpoena the third-party prior owner of the EDIBLES mark and app, as World Media has produced nothing significant

predating its own acquisition.

Finally, as the Court noted during a status conference related to World Media's motion plans, it could take six months to rule on this motion to amend. The parties have submitted a proposed schedule to allow discovery on the existing claims to move forward now and close in May 2022. Dkt. 51. By the time the Court rules, discovery for the existing claims may already have been over for some time. World Media may not <u>currently</u> plan to recall witnesses for a second deposition, but it would likely have to, or at least demand to, do so if its motion is granted after discovery on the current claims ends unless World Media risks foregoing depositions on the current claims in hopes that its motion to amend is granted and discovery reopened.

At bottom, World Media had every reason to know of the Edible Arrangements App for over nineteen moths. Its proposed new claim is therefore extremely late and leaves no inference other than that the claim was brought as a bad faith tit-for-tat reaction after mediation did not produce the results that World Media wanted. *Cornell Capital Partners, L.P. v. Cubley*, No. 03-1860 (WGB), 2005 U.S. Dist. LEXIS 53712, at *10-12 (D.N.J. Feb. 10, 2005) ("Eagle did not discover any new evidence. The deposition of Mr. Gonzalez did not contain any new evidence; to the contrary, the deposition confirmed facts that Eagle knew or should have known."). This is not a case of mere inconvenience from a poorly timed legitimate claim. Aside from Edible's prejudice in having to play catch up on a claim long-known to World Media with new discovery and the preparation of a new defense, Edible is prejudiced by having to respond at all to a vexatious and contrived claim, formed of gamesmanship, and the futility of which is established in this brief. World Media's motion must be denied.

## V.    CONCLUSION

For all of the foregoing reasons, World Media's motion should be denied.

-25-

Respectfully submitted this 22nd day of February 2022,

TROUTMAN PEPPER HAMILTON
SANDERS LLP

/s/ *Stephen J. Steinlight*
Stephen J. Steinlight
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6000
Fax: (212) 704-6288

John M. Bowler (pro hac vice)
Lindsay M. Henner (pro hac vice)
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308
Tel: (404) 885-3000
Fax: (404) 885-3900
john.bowler@troutman.com
lindsay.henner@troutman.com

*Attorneys For Edible IP, LLC and Edible
Arrangements, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Edible IP, LLC and Edible
Arrangements, LLC,

  *Plaintiffs-Counter Defendants*,

          -v.-

World Media Group, LLC,

  *Defendant-Counter Claimant.*

Civil Action File No: 3:20-cv-19178-MAS-LHG

Michael A. Shipp, U.S.D.J.
Lois H. Goodman, U.S.M.J.

## CERTIFICATE OF SERVICE

I hereby certify on February 22, 2022, I served the foregoing document via ECF to the following counsel of record:

Gregg Adam Paradise
LERNER, DAVID, LITTENBERG, KRUMHOLZ
& MENTLIK LLP
20 Commerce Drive
Cranford, New Jersey 07016
gparadise@ldlkm.com

/s/ *Stephen J. Steinlight*
Stephen J. Steinlight

-27-