Gregg A. Paradise
Daniela Caro-Esposito
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
20 Commerce Dr.
Cranford, NJ 07016
Tel:    908.654.5000

*Attorneys for Defendant/Counterclaim-Plaintiff World Media Group, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC, | : <br> : Civil Action No. 3:20-cv-19178 <br> : <br> Michael A. Shipp, U.S.D.J. <br> Lois H. Goodman, U.S.M.J. <br> : <br> Return Date:  March 7, 2022 |
| Plaintiffs, | |
| v. | |
| WORLD MEDIA GROUP, LLC, | |
| Defendant. | x |
| WORLD MEDIA GROUP, LLC, | : |
| Counterclaim Plaintiff, | : |
| v. | : |
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC, EDIBLE BRANDS, LLC, EDIBLE ARRANGEMENTS INTERNATIONAL, INC. d/b/a EDIBLE ARRANGEMENTS INTERNATIONAL, LLC and NETSOLACE, INC., | : |
| Counterclaim Defendants. | x |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
WORLD MEDIA GROUP, LLC'S MOTION FOR LEAVE TO
<u>FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS</u>**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................1

II. ARGUMENT ........................................................................................................1

    A. World Media Moved Under The Correct Legal Standard .......................1

    B. World Media Satisfied Rules 16(b) And 15(a) ..........................................2

        1. World Media Has Shown Good Cause Under Rule 16(b) ...............3

        2. World Media Has Satisfied Rule 15(a) ............................................6

            a. World Media's Proposed Counterclaims Are Not Frivolous ...........................................................................7

            b. World Media's Answers And Pleadings Are Not Inconsistent .......................................................................9

            c. World Media's Amendments Are Proper And Unprejudicial To The Original Plaintiffs ......................10

III. CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Capital Health Sys. v. Veznedaroglu*,
    No. 15-8288, 2019 U.S. Dist. LEXIS 205126, (D.N.J. Nov. 26, 2019) ...................................2

*Dimensional Communs., Inc. v. Oz Optics, Ltd.*,
    148 Fed. Appx. 82 (3d Cir. 2005) ...............................................................................................2

*Ferratex, Inc. v. United States Sewer & Drain*,
    No. 14-7527, 2017 U.S. Dist. LEXIS 229439, (D.N.J. Apr. 13, 2017) .....................................1

*Hager v. CitiMortgage, Inc.*,
    No. 16-03348, 2018 U.S. Dist. LEXIS 242902, (D.N.J. Feb. 27, 2018) ...................................1

*Korrow v. Aaron's, Inc.*,
    300 F.R.D. 215 (D.N.J. 2014) ...................................................................................................2

*Sabatino v. Union Twp.*,
    No. 11-1656, 2013 U.S. Dist. LEXIS 54866 (D.N.J. Apr. 15, 2013) ...................................2, 3

*Scott v. Vantage Corp.*,
    336 F. Supp. 3d 366 (D. Del. 2018) ...........................................................................................2

*Smith v. Honeywell Int'l, Inc.*,
    No. 10-CV-03345-ES-JAD, 2014 U.S. Dist. LEXIS 9563
    (D.N.J. Jan. 27, 2014) ...........................................................................................................1, 10

*In re TriVita, Inc.*,
    783 F.3d 872, 114 U.S.P.Q.2d (BNA) (Fed. Cir. 2015) ............................................................4

*Voilas v. Gen. Motors Corp.*,
    173 F.R.D. 389 (D.N.J. 1997) ..............................................................................................6, 10

*Wakefern Food Corp. v. Marchese*,
    No. 2:20-cv-15949, 2021 U.S. Dist. LEXIS 161661,(D.N.J. Aug. 26, 2021) ...........................7

**STATUTES, RULES & OTHER AUTHORITIES**

Charles Alan Wright *et al.*, *Federal Practice and Procedure* ............................................................6

TMEP Rule 1209.01(b) ....................................................................................................................4

Fed. R. Civ. P. 6(b)(1)(b) .................................................................................................................1

Fed. R. Civ. P. 15(a)(2) ................................................................................................................1, 3

Fed. R. Civ. P. 16(b)(4)............................................................................................................1, 2

15 U.S.C. § 1115(a) ...............................................................................................................7, 8

## I.  INTRODUCTION

World Media has set forth both good cause under Rule 16(b) and met the lenient standard of Rule 15(a) in its motion for leave to amend. In lieu of providing substantive arguments in opposition to World Media's motion, the Original Plaintiffs instead rely on accusatory language, speculation as to World Media's actions, and discovery delays of their own creation in an attempt to negate World Media's satisfaction of the applicable standards.  World Media acted diligently to file for leave to add its proposed counterclaims, and said counterclaims adequately plead a valid claim for trademark infringement.  The Original Plaintiffs have not provided any evidence to the contrary, and moreover have not made a showing of the level of prejudice necessary to justify the denial of World Media's motion.

## II.  ARGUMENT

### A.  World Media Moved Under The Correct Legal Standard

In an attempt to persuade this Court to alter its standard analysis to include an additional requirement, the Original Plaintiffs rely on a single case to support their position that World Media must make a showing of "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(b).  However, a vast majority of courts in the Third Circuit, and this District in particular, limit the analysis to Fed. R. 16(b)(4) and Fed. R. 15(a).  Indeed, the applicable legal standard has been expressly outlined by the Court as follows:

> "The threshold inquiry in deciding a motion to amend is whether the motion was filed within the deadline set by the scheduling order." *Smith v. Honeywell Int'l, Inc.*, No. 10-03345-ES-JAD, 2014 WL 301031, at *4 (D.N.J. Jan. 27, 2014).  If the motion was not timely filed, "Rule 16 requires a moving party to demonstrate good cause for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Id.* (citation omitted). . . . Once good cause has been found, the analysis turns to Rule 15.

*Ferratex, Inc. v. United States Sewer & Drain*, No. 14-7527, 2017 U.S. Dist. LEXIS 229439, at *9 10 (D.N.J. Apr. 13, 2017); *see also Hager v. CitiMortgage, Inc.*, No. 16-03348, 2018 U.S.

Dist. LEXIS 242902, at *13-14 (D.N.J. Feb. 27, 2018); *Sabatino v. Union Twp.*, No. 11-1656 2013 U.S. Dist. LEXIS 54866, at *7-9 (D.N.J. Apr. 15, 2013) ("Third Circuit courts 'have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4)' . . . if a party has filed a motion to amend 'after the deadline set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15.'"). Curiously, the Original Plaintiffs themselves cite to multiple cases that adhere to this same analysis. *See Capital Health Sys. v. Veznedaroglu*, No. 15-8288, 2019 U.S. Dist. LEXIS 205126, at 15-18 (D.N.J. Nov. 26, 2019); *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 371-372 (D. Del. 2018) *aff'd*, 845 F. App'x 170 (3d Cir. 2021)*; Dimensional Communs., Inc. v. Oz Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005); *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 219-220 (D.N.J. 2014). As such, World Media submits that the Original Plaintiffs' argument that World Media has "waived" any excusable neglect argument is of no consequence, as a showing of same is not required here.

However, World Media notes that subsumed within its good cause analysis are grounds for excusable neglect. As discussed in its moving papers, World Media had not previously been aware of the mobile applications at issue in its amended counterclaims. At the time World Media discovered their existence, the case was stayed for a period of 60 days and World Media diligently moved for leave to amend the day after the stay concluded. Therefore, World Media has properly argued under the applicable legal standard for leave to amend after the expiration of a scheduling order deadline.

B. **World Media Satisfied Rules 16(b) And 15(a)**

The Original Plaintiffs rely on discovery delays of their own creation, speculation about World Media's actions in an Opposition proceeding with a different legal standard, red herrings regarding declarations, and baseless assertions regarding the futility of World Media's proposed

counterclaims, all in an effort to combat World Media's satisfaction of the standards of Rules 16 and 15. The Original Plaintiffs' arguments lack substance and do not negate World Media's satisfaction of the requirements under Rules 16(b) and 15(a).

### 1. World Media Has Shown Good Cause Under Rule 16(b)

The essence of the Original Plaintiffs' argument against World Media's showing of good cause is that World Media was expected to (1) go outside of the scope of what is necessary for World Media's Opposition proceeding, and (2) scrutinize the Original Plaintiffs' document production to find the scant and subtle references to a mobile application (without specification as to the name of said application) discretely located at the bottom of screen captures. World Media was apparently expected to do so to compensate for the Original Plaintiffs' failure to clearly disclose the existence of its several mobile applications during this suit. However, "Rule 16(b)(4) does not require a party to exercise an advanced or superior level of diligence, but rather requires only reasonable diligence." *Sabatino*, 2013 U.S. Dist. LEXIS 54866, at *14.

Without any evidence, the Original Plaintiffs claim that due to a "yet unknown number of times searching app stores for their own EDIBLES app, beginning as early as July 2020," World Media must have stumbled upon the mobile applications at issue in World Media's proposed counterclaims.[1] (Pl. Opp. At 16.) The Original Plaintiffs go as far as to assume that World Media must have known about its Edible Arrangements application due to World Media's challenge of the Original Plaintiffs' trademarks in the *nutrition* space before the Trademark Trial and Appeal Board. World Media fails to understand how its challenge of a mark as generic and descriptive for goods in the nutrition space would have obligated World Media to undertake any

---

[1] As World Media owns its EDIBLES application, access to its data has been readily accessible and there has been no need to search for it in an app store at any time during the pendency of this suit or during the Opposition proceeding referenced by the Original Plaintiffs.

actions that would have led to the discovery of any of the mobile applications at issue. The only relevant issue to the Opposition was the meaning of the mark in connection with the goods the Original Plaintiffs wished to cover in the challenged application. (Declaration of John Bowler, Exh. 1 ¶ 7.) It is well established that "[a] mark is considered merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose, or use of the specified goods or services." *See* TMEP Rule 1209.01(b), citing to *In re TriVita, Inc.*, 783 F.3d 872, 114 U.S.P.Q.2d (BNA) 1574 (Fed. Cir. 2015) (NOPALEA held descriptive of dietary and nutritional supplements). Thus, World Media did not need to consider or search trade channels to support its descriptiveness argument in its Opposition.

The Original Plaintiffs also attempt to deflect attention away from their lack of written disclosure of the mobile applications by arguing that World Media should have served specific questions regarding channels of trade. Yet, World Media had no need to ask any questions on this subject as the Original Plaintiffs had already included an entire paragraph describing their channels of trade in their Complaint:

> 24.   Edible's franchisees share in the commitment to consistently deliver high-quality, beautifully designed fruit baskets and arrangements, as well as products such as dipped and coated fruit, baked goods, smoothies including protein smoothies with whey protein, popcorn, and other gifts (stuffed animals, mugs, balloons, candles, etc.) to consumers that are instantly recognizable as an Edible product offered under the EDIBLE Marks and brand, and **which are offered in brick and mortar stores and online through Edible's various domains including www.ediblearrangements.com and www.edible.com.**

Pl.s' Compl. at ¶ 24 (emphasis added). It appears that the Original Plaintiffs are arguing that World Media should not have trusted that the information in their Complaint was accurate and complete. Taking into consideration that the Complaint is riddled with references to *World Media's* mobile application, it is peculiar that no information about the Original Plaintiffs' own mobile applications was included.

Moreover, this argument ignores that World Media previously served requests that encompass information regarding the mobile applications at issue, specifically, Requests for Production Nos. 16 (advertising and promotions of products or services), 17 (distribution and sale), and 51 (branding). (World Media's First Req. for Produc.); World Media's Second Req. for Produc.) (Declaration of Gregg Paradise at ¶ 5, Exh. A.) It is clear that the Original Plaintiffs believed that the mobile application fell within World Media's requests because, as admitted in their opposition brief, on November 23, 2021, the Original Plaintiffs, *for the first time*, produced a single document that directly addressed their mobile application. (Pl. Opp. At 11.) In fact, the timing of this very disclosure further support's World Media's good cause argument, as the disclosure occurred a mere two weeks before discovery in this suit was stayed for a period of 60 days.[2] Aside from this single document produced in November 2021, the Original Plaintiffs are only able to point to screen captures of their website that include a generic reference to the Apple App Store and Google Play store located at the bottom of the screen capture. (Declaration of John Bowler, Exh. 11.)[3] Importantly, the app store icons do nothing to indicate the name of the Original Plaintiffs' Edible Arrangements mobile application, nor do those links lead to the other two accused applications. *Id.* Thus, these documents do not disclose the Original Plaintiffs' or the Opposing Parties' infringement of World Media's federal trademark registration.

Further, while World Media does not believe that any declarations are needed to meet the standard of Rule 16(b) (or of 15(a)), submitted with its reply are sworn declarations from counsel

---

[2] At this time, World Media had deposed two witnesses, and the parties had agreed to engage in private mediation. Once the Court was apprised of the parties' agreement to engage in mediation, the present action was stayed from December 9, 2022, until February 9, 2022.

[3] To date, the Original Plaintiffs have provided two document productions. The first set was produced on August 19, 2021 and consisted of one combined PDF comprised of 2,259 pages. The second set was produced on November 23, 2021 and consisted of one combined PDF comprised of 1,596 pages.

of record and the principals of World Media attesting to the timing of the knowledge of the mobile applications at issue. World Media acquired its EDIBLES mobile application and corresponding federal registration on October 30, 2015. (Declaration of Gary Millin at ¶ 3.) The Original Plaintiffs' Edible Arrangements application was not launched until sometime in 2016. (Declaration of John Bowler at Exhs. 21-22.) World Media's counsel did not learn of any of the applications until January 2022, during which time World Media was engaging in preparation for mediation. (Declaration of Gregg Paradise at ¶ 7.) Further, counsel of record did not provide any legal advice or participate in any discussions with its clients regarding the mobile applications at issue until that time. (*Id.*; Declaration of Gerald Gorman at ¶ 5; Declaration of Gary Millin at ¶¶ 5-7.)[4]

As such, the Original Plaintiffs' have not shown that World Media was previously aware of the mobile applications at issue and have not negated World Media's showing of good cause.

### 2. World Media Has Satisfied Rule 15(a)

It has been well established that although courts have broad discretion to decide motions to amend, they are to "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Voilas v. Gen. Motors Corp.,* 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); *see also* Charles Alan Wright *et al.*, *Federal Practice and Procedure*: (Vol. 6) Civil 3d § 1484, at 676 (3d ed. 2010) ("Subdivision (a)(2) [of Rule15]

---

[4] The Original Plaintiffs also suggest that counsel intentionally omitted the references to the app store links when preparing various exhibits. With regard to exhibits prepared to support its motion to transfer, counsel simply included the portions of the website relevant to its argument in the motion and did not leave out the remainder of the webpages for any strategic purpose. (Declaration of Gregg Paradise at ¶4.) Further, when preparing the deposition exhibits, counsel utilized the "print to PDF" function to capture the website screens. (Declaration of Gregg Paradise at ¶ 6.) After repeating this procedure for purposes of this reply brief, it has now become clear that this particular method does not include the links at the bottom of a webpage. A step-by-step representation of this is attached to the sworn declaration of Gregg Paradise. (*Id.* at Exh. B.)

encourages the court to look favorably on requests to amend."). The Original Plaintiffs go to great lengths to create the appearance of bad faith, prejudice, and futility in an attempt to circumvent this standard. Their arguments, however, are merely the smoke and mirrors of accusatory language.

### a. World Media's Proposed Counterclaims Are Not Frivolous

World Media's proposed counterclaims are a far cry from futile or frivolous. Indeed, the Original Plaintiffs' alarmingly flippant use of those terms throughout their opposition brief in connection with World Media's sound claims have rendered those serious terms meaningless.[5] As correctly outlined by the Original Plaintiffs, to support its proposed counterclaims, World Media must plead that "(1) the mark at issue is valid and legally protectable; (2) the mark is owned by [World Media]; and (3) [the Opposing Parties'] use of the mark is likely to cause confusion among customers as to the origin of the goods or services at issue." *Wakefern Food Corp. v. Marchese*, No. 2:20-cv-15949, 2021 U.S. Dist. LEXIS 161661, at *7 (D.N.J. Aug. 26, 2021). The Original Plaintiffs fail to adequately explain how World Media has not done so.

In fact, World Media has clearly and directly pled each of the elements in its proposed counterclaims. With regard to element (1), World Media asserted incontestable federal trademark Reg. No. 3,763,049 for the mark EDIBLES for use in connection with mobile applications. (Exh. A to Mot. Br. at ¶¶ 6-7.) A federal trademark registration is "prima facie evidence of the validity of the registered mark. . . ." 15 U.S.C. § 1115(a). As to element (2), World Media asserted ownership of said mark, which is plainly visible in the records of the

---

[5] Accusatory terms, including but not limited to, "sanctionably futile," "outright frivolous," "frivolous and solely retaliatory," "sheer absurdity," "obvious Rule11 questions and the specter of sanctions," "bad faith," and "vexatious and contrived claim, formed of gamesmanship," show up throughout the Original Plaintiffs' opposition brief no less than 18 times. (Pl. Opp. Br. at 1, 2, 10, 13, 15, 19, 20, 22 and 25.)

United States Patent and Trademark Office. (Exh. A to Mot. Br. at ¶¶ 6-7.) Once more, this is prima facie evidence "of the registrant's ownership of the mark. . . ." 15 U.S.C. § 1115(a). In satisfaction of element (3), World Media's proposed pleadings assert that the owners of the "Edible Arrangements" (appearing as "Edible" when downloaded), "edible STRONGER together," and "Edible Go!" mobile applications are infringing World Media's trademark rights by operating mobile applications with names that are confusingly similar to (and nearly identical to) the EDIBLES mark. (Exh. A to Mot. Br. at ¶¶ 17-27.) The owner of each application is identified in connection with their accused mobile application. *Id*. World Media's federal registration covers "computer application software for mobile phones." Nothing more than operating a mobile phone application with a confusingly similar name to World Media's registered trademark is needed to infringe World Media's rights and cause World Media harm. Not only has World Media sufficiently pled its claims, the facts asserted in the pleadings alone are enough to prevail on a suit for infringement.

The Original Plaintiffs attempt to skirt around this showing by arguing that two of the mobile applications are not intended for the general public, but only for Edible Arrangements' employees and franchisees. However, those thousands of employees and franchisees could still be consumers of World Media's mobile application. Moreover, the mere existence of those two applications, irrespective of their intended audience, still harm World Media's rights. As pointed out by the Original Plaintiffs, those applications shift World Media's mobile application down in the search results in both the Apple App Store and the Google Play Store, making consumers less likely to find and download World Media's application. (Pl. Opp. Br. at 9-10.)

Noticeably absent from the Original Plaintiffs' arguments with respect to the specific mobile applications at issue in World Media's proposed counterclaims is any rationale that the

"Edible Arrangements" mobile application, which simply appears as "Edible" when downloaded, does not infringe World Media's federal registration. This absence is telling, as even when alleging futility of World Media's claims, the Original Plaintiffs are unable to articulate any substantive argument as to why infringement allegations against their primary "Edible" mobile application would fail. However, as discussed above, World Media has specifically pled each and every element of a valid trademark infringement claim.

Therefore, World Media submits that its proposed counterclaims cannot reasonably be deemed futile, and as such, the Original Plaintiffs' arguments in this regard must fail.

### b. World Media's Answers And Pleadings Are Not Inconsistent

The Original Plaintiffs argue that there is an inconsistency between World Media's Answers to the Complaint and World Media's proposed counterclaims. This argument misunderstands the interrelationship between a trademark and the goods and services it represents. The Original Plaintiffs' arguments improperly consider the asserted marks separately from the goods they cover.

In their Complaint, the Original Plaintiffs allege that World Media's operation of the domain name edibles.com in connection with promotion of its nutrition mobile application, EDIBLES, and prior gift giving services, are likely to cause confusion with its trademarks covering arrangements comprised of fruit shaped like flowers and related goods and services. In response, World Media has denied these allegations, arguing that its use of the edibles.com domain name and the EDIBLES nutrition application do not infringe the Original Plaintiffs' trademark rights, which are in the realm of the fruit gifting industry, i.e. marks used in connection with markedly different goods and services. Moreover, the Original Plaintiffs' rights are highly limited or nonexistent as they are used in a descriptive or generic fashion.

In stark contrast to the above, World Media's counterclaims allege that the Opposing Parties' unauthorized mobile applications at issue, which incorporate the term "Edible," infringe World Media's federal registration for the mark EDIBLES in connection with "computer application software for mobile phones." These allegations compare the use of the term "Edible" used in connection with mobile applications with a federal registration for the mark EDIBLES for mobile applications, i.e., *nearly identical marks for identical goods*.

Thus, World Media agrees with the Original Plaintiffs that the parties' EDIBLE and EDIBLES trademark are highly similar. The difference is that World Media's uses are quite different than the Original Plaintiffs' registered goods, while the Original Plaintiffs' uses are identical to World Media's registered goods.

### c. World Media's Amendments Are Proper And Unprejudicial To The Original Plaintiffs

Due to an inability to assert true unfair prejudice, the Original Plaintiffs resort to confusing the issue by trying to create the appearance of bad faith. As a continuation of their earlier arguments, the Original Plaintiffs claim that World Media must have known about the existence of the Edible Arrangements mobile phone application and strategically waited until mediation proved unsuccessful to bring its claims. As outlined *supra*, the Original Plaintiffs' theories of World Media's previous knowledge of the mobile applications at issue are untenable. In any event, such knowledge or delay is not relevant to whether actual unfair prejudice exists.

The Original Plaintiffs attempt to use discovery delays of their own creation as a basis for unfair prejudice. In the context of Rule 15(a), "'[t]o justify the denial of a motion to amend, the asserted prejudice must amount to more than mere inconvenience to the non-moving party.'" *Smith v. Honeywell Int'l, Inc.*, No. 10-03345, 2014 U.S. Dist. LEXIS 9563, at *25 (D.N.J. Jan. 27, 2014). Here, the Original Plaintiffs' arguments do not rise to the level of prejudice

needed to justify the denial of this motion. Rather, the Original Plaintiffs broadly argue that discovery delays would result from the amendment because they would need to collect information to support their defense. However, aside from identifying a single subpoena to the third-party prior owner of the EDIBLES application and trademark registration, the Original Plaintiffs are unable to articulate any additional discovery they would require. (Pl. Opp. at 24.) Moreover, the parties discussed an extension of the discovery period prior to the filing of World Media's motion. During that discussion, the Original Plaintiffs refused to consider or discuss discovery issues that were relevant to World Media's counterclaims.[6] The Original Plaintiffs cannot now claim undue prejudice due to their lack of willingness to discuss and possibly resolve any discovery issues that may relate to World Media's proposed counterclaims. The Original Plaintiffs have not set forth why a three-month period is inadequate to accomplish any minimal additional discovery they may need. And as discussed in its moving papers, World Media has already produced ample discovery about its mobile application in response to the Original Plaintiffs' requests. The Original Plaintiffs do not address the application download statistics or the acquisition documents already produced, instead claiming that the coding information provided is unhelpful to them.[7] (Pl. Opp. at 24.) World Media fails to see how a dislike of documents appropriately produced in response to their requests is any basis for an argument that World Media has not produced "ample information and documentation." Finally, World Media once more represents it does not intend to serve any additional discovery demands concerning the mobile applications at issue in its proposed counterclaims.

---

[6] World Media's moving papers erroneously state that the requested discovery deadline is March 9, 2022, when it is actually May 9, 2022. Additionally, the date was chosen in part to accommodate the Original Plaintiffs' business schedule due to upcoming seasonal holidays.

[7] The Purchase Agreement has been produced as WMG00011204-15. Statistics on the application's downloads have been produced as WMG00013868-74.

In light of the above, the Original Plaintiffs' argument that World Media has not satisfied the lenient standard of Rule 15(a) is unavailing.

### III.   CONCLUSION

For the foregoing reasons, World Media's motion should be granted.

Respectfully submitted,

LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
*Attorneys for Defendant/Counterclaim
Plaintiff World Media Group, LLC*

Dated: February 28, 2022          By:   s/ Gregg A. Paradise
                                        Gregg A. Paradise
                                        Tel:    908.654.5000
                                        E-mail: gparadise@lernerdavid.com
                                                litigation@lernerdavid.com