**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EDIBLE IP, LLC and EDIBLE ARRANGEMENTS, LLC,** | Civil Action No. 20-19178 (MAS)(LHG) |
| Plaintiffs, | |
| v. | |
| **WORLD MEDIA GROUP, LLC,** | **ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS** |
| Defendant. | |

## I.    INTRODUCTION

Before this Court is Defendant World Media Group, LLC's ("World Media") Motion for Leave to File a Second Amended Answer and Counterclaims ("Motion to Amend") [Docket Entry No. 52] and Memorandum of Law in Support of Motion to Amend ("Brief in Support of MTA") [Docket Entry No. 52-1].  Accompanying the Motion to Amend is World Media's proposed Second Amended Answer and Counterclaims ("Proposed Answer" and "Proposed Counterclaim") [Docket Entry No. 52-2 (redlined version)].  Plaintiffs Edible Arrangements, LLC and Edible IP, LLC (collectively, "Edible") filed Opposition to Motion to Amend ("Opposition") [Docket Entry No. 53] and Declaration of John M. Bowler, Esq. in Support of Opposition ("Bowler Decl.") [Docket Entry No. 54].  World Media filed a Reply Memorandum of Law in Support of Motion to Amend ("Reply") [Docket Entry No. 55].

The Court has considered the Motion to Amend on the papers filed, without oral argument, pursuant to Fed. R. Civ. P. 78 and Local Civil Rule 78.1(b).  For the reasons set forth below, the Court grants the Motion to Amend.

## II.     BACKGROUND

### A.     Underlying Events and Pleadings

Edible is a franchisor of stores "well known for its artistically designed fresh-fruit products evocative of floral designs, its dipped fruit products like chocolate dipped strawberries, and baked goods."  Complaint ¶14 [Docket Entry No. 1].  Edible sells its products through its network of franchises, affiliates, its call center, and the Internet.  *Id*.  In association with the "Edible" brand, Edible owns various trademarks, service marks, trade dress, domain names, copyrights, and other intellectual property.  *Id*. ¶15.

World Media is a New Jersey limited liability company that owns and operates the website www.edibles.com, an informational website that promotes the Edibles mobile application ("EDIBLES App").  *Id.* ¶¶7, 56, 71.  The EDIBLES App is a food database for users "to quickly find calorie and nutrition data for 1,000's of food items*." Id.* ¶75.

On August 5, 2020, Edible sued World Media alleging that World Media infringed Edible's prior trademark rights through its use of the domain name www.edibles.com and the EDIBLES App.  *See generally* Complaint.  World Media filed an Answer and Counterclaim seeking declaratory judgment of noninfringement ("Answer and Counterclaim") [Docket Entry No. 22]. On June 25, 2021, World Media filed an Amended Answer and Counterclaims with leave of this Court, adding three new counterclaims: (1) tortious interference with prospective economic advantage (Count II); (2) order compelling the U.S. Patent and Trademark Office to cancel Edible's trademark registration (Count III); and (3) order compelling the U.S. Patent and Trademark Office to refuse Edible's trademark application (Count IV) ("First Amended Answer and Counterclaim") [Docket Entry No. 35].  Edible then filed a Reply to World Media's Amended Counterclaim ("Reply to Amended Counterclaim") [Docket Entry No. 38].

### B.     Discovery and Scheduling

The Court entered a Pretrial Scheduling Order on April 23, 2021, giving the parties until June 25, 2021 to file any request for leave to amend or to add parties and until October 29, 2021 to complete fact discovery.  Scheduling Order dated April 23, 2021 [Docket Entry No. 33].  On August 19, 2021, Edible produced its first set of documents to World Media, including screenshots of Edible's websites with images of the Google Play Store and Apple App Store icons ("App Store Icons").  Bowler Decl. ¶22, Ex. 20.  On November 23, 2021, Edible produced to World Media two documents that specifically referenced the launch of the Edible Arrangements mobile application. *Id.* ¶¶23–24, Exs. 21–22.

World Media also deposed two witnesses in November 2021: Stephen Thomas, Edible's former employee, and Paul Bundonis, brand president of an Edible-affiliated company, Incredible Edibles.  *Id.* ¶¶26–27, Exs. 24–25.  On December 9, 2021, the Court stayed this case pending mediation.  *See* Mediation Order dated December 9, 2021 [Docket Entry No. 47].

The parties participated in a private mediation on January 11, 2022, but were unable to reach any agreement.  *Id.*  A week later, on January 18, 2022, World Media filed a new lawsuit against Edible and additional parties, alleging that Edible's mobile applications infringed World Media's EDIBLES trademark in connection with mobile phone applications.  *See* Complaint, *World Media Group, LLC v. Edible Arrangements, LLC, et al.,* Civ. Action No. 22-00216 (MAS/LHG) ("New Complaint") [Docket Entry No. 1].  During a telephone conference on February 1, 2022, counsel for Edible informed the Court that Edible did not consent to World Media's amending its counterclaim to add the new claims as part of this suit.  Edible also refused to consent to consolidating the two cases.  As a result, on February 10, 2022, World Media filed the present Motion to Amend.  World Media then withdrew its New Complaint without prejudice.

*See* Notice of Withdrawal of Complaint without Prejudice and related Order, Civ. Action No. 22-00216 [Docket Entry Nos. 8–9].

On March 10, 2022, the Court extended the close of fact discovery to May 9, 2022.  Letter Order dated March 10, 2022 [Docket Entry No. 56].  The Court again extended fact discovery related to the current pleadings until June 6, 2022.  Letter Order dated May 13, 2022 [Docket Entry No. 58].  At the parties' request, the Court then ordered the parties to complete any remaining fact discovery on the current and potential new claims within 90 days of a decision on the present Motion to Amend.  *Id.*

## III.    ARGUMENTS OF THE PARTIES

### A.    World Media's Motion to Amend

World Media seeks to add counterclaims for infringement of its registered trademark EDIBLES in connection with mobile phone applications and to add as counterclaim defendants the owners of the mobile applications.  Motion to Amend at 2.  Specifically, World Media alleges that Edible's operation of its mobile applications "Edible Arrangements," "Edible STRONGER Together," and "Edible Go!" ("Edible Arrangements App," "Edible Convention App" and "Edible Go App" respectively, and collectively, the "Edible Apps") infringes World Media's EDIBLES mark.  Proposed Counterclaim ¶¶17-27.  World Media's Proposed Counterclaim seeks to add the following claims: (1) infringement of World Media's federally registered mark EDIBLES (Count V); (2) violation of Section 43(a) of the Lanham Act (Count VI); (3) common law trademark infringement and unfair competition (Count VII); and (4) unfair competition under N.J.S.A. 56:4-1 (Count VIII).  *Id.* ¶¶53–70.

World Media claims that good cause is present pursuant to Rule 16 because it was reasonably diligent in seeking to amend its counterclaim upon learning about the existence of the

Edible Apps.  Brief in Support of MTA at 1–2.  In this regard, World Media contends that it "only recently became aware of the existence of the various [Edible Apps]" because they were not mentioned in Edible's Complaint, in written discovery responses, or during the depositions of Edible's witnesses, Stephen Thomas and Paul Bundonis.  *Id.* at 2.  Instead, World Media alleges that it first discovered the Edible Apps during its preparation for the mediation.  *Id.*  World Media further claims that it promptly sought leave to amend after the mediation was unsuccessful.  *Id.*

World Media also argues that the Rule 15 factors support granting the Motion to Amend. *Id.* at 3.  First, it contends that the amendment will not unfairly prejudice Edible because Edible has been aware of World Media's trademark since at least April 2021, when Edible requested documents related to World Media's trademark registration.  *Id.* at 4–5.  In addition, World Media referenced the existence of its trademark in response to Edible's first set of interrogatories.  *Id*. at 5–6.

Next, World Media contends that granting the Motion to Amend will not prolong discovery.  *Id.* at 6.  At the time it filed the Motion, discovery remained open and the parties had jointly proposed an extension.  *Id.*  World Media also argues that it previously served discovery requests that encompass the Edible Apps, including the following:

- Request No. 16: "Documents sufficient to identify the geographic scope and extent of the advertising and promotion of products or services offered, or intended to be offered, under each of Plaintiffs' Registered Marks and Plaintiffs' Applications";

- Request No. 17: "Documents identifying the geographic scope and extent of the distribution and sale of products or services offered"; and

- Request No. 51: "Representative documents that show product development and branding of items marketed with the brand 'EDIBLE' or 'EDIBLES.'"

Declaration of Gregg A. Paradise, Esq. in Support of Motion to Amend ("Paradise Decl.") [Docket Entry Nos. 55-1, 55-2] ¶5, Ex. A.  World Media further argues that it already produced to Edible "ample information and documentation related to World Media's mobile application" in response

to Edible's discovery requests.  Brief in Support of MTA at 7.

Finally, World Media contends that granting the Motion to Amend will save judicial time and resources because its new counterclaims largely involve the same parties concerning issues related to trademark infringement.  *Id.* at 8.

### B.   Edible's Opposition to the Motion to Amend

Edible opposes the Motion to Amend, asserting that World Media cannot satisfy the requirements of either Rule 16 or Rule 15.  With respect to Rule 16, Edible argues that World Media has failed to show good cause.  Opposition at 16.  According to Edible, World Media's claim that it only recently became aware of the Edible Apps is demonstrably false.  *Id.*  Edible contends that World Media must have known about the Edible Apps beginning as early as July 2020, when World Media filed a Trademark Office Opposition Proceeding to prevent Edible from registering the trademark EDIBLE for nutritional supplement goods.  *Id*. at 2, 16.

Edible argues at length that it is "almost impossible" that World Media and its counsel did not learn about the Edible Apps after numerous exposures.  *Id.* at 16.  Specifically, Edible claims that in preparing for its challenge to Edible's trademarks before the Trademark Trial and Appeal Board, World Media would have reviewed Edible's prior application, which included images of App Store Icons on Edible's website.  *Id.* at 2–3, 16.

Second, Edible argues that World Media must have come across the Edible Apps during this litigation.  Edible points to incomplete screenshots of Edible's website, attached as an exhibit to World Media's declaration in support of its Motion to Dismiss.  *Id.* at 4.  A complete printout would have included the App Store Icons refencing the Edible Arrangements App.  *Id.* at 4–5.  Edible also argues that World Media must have come across the Edible Apps while searching for its own application in the app stores because users must scroll past the Edible Arrangements App

before they come to World Media's EDIBLES App.  *Id.* at 9–10 and 16.

Furthermore, Edible contends that the App Store Icons appeared at least 18 times in Edible's document production to World Media on August 19, 2021.  *Id.* at 11.  On November 23, 2021, Edible made another production that specifically referenced the Edible Arrangements App. *Id.*

Edible also argues that World Media failed to seek discovery as to the Edible Apps.  *Id.* at 16.  Edible claims that World Media's interrogatories did not ask for an identification of Edible's trade channels.  *Id.*  According to Edible, World Media deposed two of Edible's witnesses, but did not ask either witness about Edible's trade channels or about Edible's mobile applications, including whether such mobile applications exist.  *Id*. at 12, 16.  Edible therefore concludes that World Media has failed to meet its burden of showing it acted with due diligence under Rule 16. *Id.* at 17.

With regard to Rule 15, Edible first argues that the proposed amendment is futile because it does no more than "regurgitate conclusory legal standards."  *Id.* at 19.  Moreover, Edible contends two of the mobile applications at issue (Edible Go App and Edible Convention App) are not available for consumption by the public.  *Id.* at 20.

Edible also says the amendment would be futile because World Media's Answer is irreconcilable with its new allegations, given that World Media expressly denied any likelihood of confusion between EDIBLE and EDIBLES marks.  *Id.* at 22.  By contrast, World Media now seeks to amend to assert that there is in fact likelihood of confusion between the two marks.  *Id.*

Finally, Edible argues that World Media cannot satisfy the requirements under Rule 15 because its Motion to Amend is untimely, prejudicial, and made in bad faith.  *Id* at 23–25.  First, Edible argues that simply knowing about the EDIBLES App is a "far cry from placing Edible on

notice of a trademark infringement counterclaim." *Id.* at 23.  Edible argues that World Media knew of the Edible Apps for a significant amount of time and did not bring a claim until after the unsuccessful mediation.  *Id.*  Edible further asserts that it would need to seek "full scope of information" to support its defense against World Media's proposed infringement claim, including a subpoena to the prior owner of the EDIBLES mark and App.  *Id.* at 24.  As a result, Edible believes that World Media's Proposed Counterclaim would significantly extend discovery and delay the current proceeding.  *Id*. at 24–25.

### C.    World Media's Reply

On Reply, World Media maintains it did not learn about the Edible Apps until January 2022, and it should not be expected to have learned about the Edible Apps from images of App Store Icons "discretely located at the bottom of screen captures."  Reply at 3, 6.  World Media also contends it would not have learned about the Edible Apps from the Trademark Office Opposition Proceeding because the only relevant issue there was the meaning of the mark in connection with the goods Edible specified in its application.  *Id.* at 3–4.  World Media argues it did not have to consider or search Edible's trade channels, *i.e.*, the Edible Apps, to support its Trademark Office Opposition Proceeding.  *Id.* at 4.  According to World Media, Edible only produced a single document that directly referenced the Edible Arrangements App for the first time on November 23, 2021.  *Id.* at 5.

World Media also supplements its good cause argument with declarations from World Media's counsel and owners, attesting to their lack of knowledge about the Edible Apps until they were preparing for mediation in January 2022.  Reply at 5–6.  Although World Media's co-owner, Gary Millin, acknowledges that he likely would have seen one or more Edible Apps during his search for applications with the term "Edibles" in their titles, he did not have any specific

recollection of the Edible Apps and did not discuss them until January 2022 during preparation for mediation.  Declaration of Gary Millin in Support of Motion to Amend ("Millin Decl.") [Docket Entry No. 55-5] ¶¶4, 7.  World Media's counsel and its co-owner Gerald Gorman claim they did not know about or discuss the Edible Apps at all until January 2022 in preparation for the mediation.  Paradise Decl. ¶7; Declaration of Gerald Gorman in Support of Motion to Amend ("Gorman Decl.") [Docket Entry No. 55-4] ¶5.

World Media responds to Edible's futility argument, stating that it has sufficiently pled facts to support each of the three elements required to prove its trademark infringement claim: (1) the mark at issue is valid and legally protectable; (2) the mark is owned by World Media; and (3) use of the mark is likely to cause confusion among customers as to the origin of the goods and services at issue.  Reply at 7–8.  World Media claims "[n]othing more than operating a mobile phone application with a confusingly similar name to World Media's registered trademark is needed to infringe World Media's rights and cause World Media harm."  *Id.* at 8.  Moreover, even if two of the three Edible Apps are not intended for the general public, World Media argues that the mere existence of the two applications harms World Media's rights.  *Id.*

Finally, World Media responds that there is no inconsistency between its Answer and its Proposed Counterclaim.  *Id.* at 9.  In its Answer, World Media denied that its use of the www.edibles.com domain name and the EDIBLES App infringes on Edible's trademark rights, which are in the fruit gifting industry.  *Id.* at 9.  World Media's Proposed Counterclaim, on the other hand, alleges that the Edible Apps infringe on World Media's trademark EDIBLES in connection with "computer application software for mobile phones."  *Id.* at 10.  While acknowledging that the EDIBLE and EDIBLES trademarks are highly similar, World Media insists that its own use is different from Edible's registered goods, while Edible's is identical to

that of World Media. *Id.*

## IV.   LEGAL STANDARD

Rule 15 generally governs leave to amend a pleading, and allows a party to amend once as a matter of course within a specified time. Fed. R. Civ. P. 15(a)(1). After that period has passed, a party may amend only with written consent of the adverse party or with leave of court. Fed. R. Civ. P. 15(a)(2). If the period for amendment under Rule 15 has expired, the Court must first look to Rule 16 to determine whether there is good cause to extend the Rule 15 deadline. *See Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 669 (3d Cir. 2017) ("[T]he lenient Fed. R. Civ. P. 15(a)(2) standard that 'the court should freely give leave when justice so requires' yields to the good cause requirement."); *Sabatino v. Union Twp.*, Civ. No. 11-1656, 2013 WL 1622306, at *3 (D.N.J. Apr. 15, 2013) ("[I]f a party has filed a motion to amend 'after the deadline set by the Court, the movant must satisfy the good cause standard of Rule 16 before the Court will turn to Rule 15.'") (quoting *Karlo v. Pittsburgh Glass Works, LLC*, Civ. No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011)).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Good cause depends on the diligence of the moving party. *See Grasso v. Consol. Rail Corp.*, Civ. No. 12-398, 2013 WL 3167761, at *5 (D.N.J. June 20, 2013). A court must determine whether the movant possessed, or through reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline's expiration. *Id*. A lack of prejudice to the non-moving party is not enough to constitute good cause under Rule 16. *See Heerema v. Forster, Garbus & Garbus*, Civ. No. 15-7252, 2018 WL 1837892, at *4 (D.N.J. Apr. 17, 2018).

Our courts have found that "'[g]ood cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Young v. United States*, 152 F. Supp. 3d 337, 352–53 (D.N.J. 2015) (quoting *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)).  A Magistrate Judge has the discretion to decide what kind of showing the moving party must make to satisfy Rule 16(b)(4)'s good cause requirement.  *Phillips v. Greben*, Civ. No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (citation omitted).

If the moving party can satisfy the requirements of Rule 16,[1] the request for leave must still meet the requirements of Rule 15, which provides that leave to amend shall be liberally granted. *See WHY ASAP, LLC v. Compact Power*, 461 F. Supp. 2d 308, 311 (D.N.J. 2006).  The court must allow the amendment in the absence of "undue delay, bad faith, dilatory motive, unfair prejudice or futility of amendment." *Id.* (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

Under Rule 15, delay alone is insufficient to deny a request for leave to amend, *see Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), but the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citation omitted). Courts will deny such a request where delay becomes undue, when its accommodation creates an

---

[1] Edible argues that World Media must make a separate showing of "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B). *See* Opposition at 15.  The Court finds that Third Circuit case law does not require consideration of excusable neglect as a separate factor.  In any event, the Court finds that any such consideration is sufficiently addressed by the undue delay and good cause analyses under Rules 15 and 16.

"unwarranted burden on the court . . . [and] unfair burden on the opposing party." *Adams*, 739 F.2d at 868.

Similarly, prejudice must rise to such a level that the non-moving party would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Harrison Beverage Co.*, 133 F.R.D. at 468 (internal quotation marks and citation omitted). In evaluating the extent of any alleged prejudice, the court looks to the hardship on the non-moving party if the amendment were granted. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.  See also Corbisiero v. Leica Microsystems, Inc.*, Civ. No. 09-975, 2010 WL 5441662, at *2 (D.N.J. Dec. 28, 2010) ("[T]he burden of establishing [prejudice] rests with the non-moving party, who must demonstrate that permitting the party to amend the complaint would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.") (internal quotation marks and citation omitted). Prejudice to the non-moving party "is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." *Harrison Beverage Co.*, 133 F.R.D. at 469.

Finally, a proposed amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Id.* at 468. Courts employ the Rule 12(b)(6) standard to determine whether a proposed amendment is futile. *See Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). Thus, a court must

determine whether the amended claims "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Luna-Diaz v. Hackensack Police Dep't*, Civ. No. 16-3270, 2020 WL 206061, *5 (D.N.J. Jan. 14, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether an amendment is futile, the Court may look only to the pleadings, documents relied upon in the complaint, or documents integral to the complaint. *Pharmaceutical Sales & Consulting Co. v. J.W.S. Delavau Co.,* 106 F. Supp. 2d 761, 765 (D.N.J. 2000). The party opposing the amendment carries the burden of establishing that the proposed amendments are futile, and that burden is a heavy one "given the liberal standard applied to the amendment of pleadings." *Id*. at 764.

## V.     ANALYSIS

### A.     Rule 16

Because the time to amend under Rule 15 has already expired, the Court begins its analysis under Rule 16. *See Sang Geoul Lee*, 720 F. App'x at 669. In seeking leave to amend under Rule 16, a party needs to show good cause, frequently referred to as diligence. *Grasso*, 2013 WL 3167761, at *5. Thus, a critical consideration in determining whether good cause exists under Rule 16 is whether World Media acted with diligence in pursuing the proposed amendments. *Id.* Only if this standard has been met does the Court move on to an analysis under Rule 15. *See Sabatino*, 2013 WL 1622306, at *3.

In determining whether World Media acted with diligence, the Court reviews the timeline of the underlying events. Approximately two months after the deadline to amend pleadings, on August 19, 2021, Edible produced to World Media its first set of documents, including numerous screenshots of Edible's website displaying App Store Icons, which appear to reference the Edible Arrangements App. *See, e.g.*, Bowler Decl. ¶22, Ex. 20. On November 23, 2021, Edible produced

for the first time two documents that specifically referenced the launch of the Edible Arrangements App. *Id.* ¶¶23–24, Exs. 21–22. About two weeks later, on December 9, 2021, the Court entered a 60-day stay pending the parties' mediation.

Edible asserts that World Media's exposure to the Edible Apps dates back to July 2020, when World Media filed a Trademark Office Opposition Proceeding to prevent Edible from registering the trademark EDIBLE for nutritional supplements. Opposition at 2, 16. Edible argues that World Media would have discovered the Edible Apps by searching the app stores for its own EDIBLES App, because users must scroll past the Edible Apps before they see World Media's EDIBLES App. *Id.* at 9–10, 16. Edible further claims that World Media would have encountered numerous documents showing the App Store Icons, including documents from Edible's production in August 2021, and thus World Media would have known about the existence of the Edible Apps. *Id.* at 16.

At this stage, the Court is hesitant to conclude that World Media had full knowledge of the Edible Apps based on its exposure to documents without specific references to the Edible Apps. Edible may be right that World Media could have exercised more diligence in searching and reviewing at least the Edible Arrangements App, which is publicly available and free to use for anyone with internet access and a mobile device. As World Media correctly points out, however, "Rule 16(b)(4) does not require a party to exercise an advanced or superior level of diligence, but rather requires only reasonable diligence." *Sabatino*, 2013 WL 1622306, at *5.

The Court is therefore persuaded by World Media's own statement that it first learned of the potential claims related to the Edible Apps during preparation for mediation in January 2022.

Reply at 6.  World Media supplied declarations[2] from counsel and its two owners swearing that they first became aware of and discussed the Edible Apps in January 2022 when they were preparing for mediation.  *See* Paradise Decl. ¶7; Gorman Decl. ¶5; Millin Decl. ¶7.  World Media acted swiftly to file the instant Motion to Amend within a month of alleged discovery, after the mediation proved unsuccessful.  *See Grasso*, 2013 WL 3167761, at *6 (finding good cause in part because the plaintiff filed the motion to amend less than one month after he allegedly became aware of the potential new claim)*; see also Sabatino*, 2013 WL 1622306, at *5 (finding good cause and reasonable diligence where plaintiff filed his motion for leave less than 50 days after receiving discovery regarding additional parties he may seek to add to the amended complaint).

Moreover, this case was stayed approximately two weeks after World Media received the documents specifically referencing the Edible Arrangements App in November 2021.  World Media then sought leave to amend promptly after the Court lifted the stay.  Therefore, the Court finds World Media exercised reasonable diligence in seeking leave to amend its counterclaims upon learning about the existence of the Edible Apps and after the stay was lifted.  *See Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, Civ. No. 14-4265, 2017 WL 772905, at *2 (D.N.J. Feb. 27, 2017) (finding that plaintiff exercised reasonable diligence when it filed a motion to amend shortly after the 60-day discovery stay expired and after learning new facts through discovery shortly before the court entered the stay).

Accordingly, the Court finds that World Media has shown good cause under Rule 16.

---

[2] Edible claims without citing any legal authority "[a]ny testimony conveniently submitted with World Media's reply brief would be procedurally improper."  Opposition at 10.  Although "[a] party cannot raise issues for the first time in a reply brief," *Stern v. Halligan*, 158 F.3d 729, 731, n.3 (3d Cir. 1998), the Court finds that World Media provides the declarations in support of its arguments first introduced in the Brief in Support of MTA and does not raise new arguments.  Accordingly, the Court considers the declarations.

### B.    Rule 15

The Court now turns to the analysis under Rule 15.  Courts have consistently held that Rule 15 calls for the liberal grant of amendments absent undue delay, prejudice, bad faith, dilatory motive, or futility.  *See WHY ASAP*, 461 F. Supp. 2d at 311.

### 1.    Prejudice, Bad Faith, and Undue Delay

The Court first addresses whether an amendment at this stage would prejudice Edible or cause undue delay, or whether World Media brought its Motion to Amend in bad faith.  The Third Circuit has repeatedly found that passage of time alone, without anything else, is not enough to deny a Motion to Amend.  *See Adams*, 739 F.2d at 868.  Rather, the Court must focus on the movant's motive for not amending the claim earlier.  *Id.*

As discussed above in the Rule 16 analysis, the Court finds that World Media acted diligently and without undue delay because it filed the Motion to Amend promptly after it discovered the Edible Apps.  *See Sabatino*, 2013 WL 1622306, at *7 (finding the plaintiff did not cause undue delay in seeking to amend his complaint because he filed the motion within 50 days of receiving the defendant's letter naming additional potential defendants).  For those same reasons, the Court does not find undue delay or bad faith pursuant to Rule 15.  *See Corbisiero*, 2010 WL 5441662, at *4 (finding no undue delay or bad faith where the plaintiff's counsel moved to amend only eight days after discovery of a potential new claim even though plaintiff had been in possession of the relevant documents earlier).

Under Rule 15, prejudice must rise to such a level that the non-moving party would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" or the amendment would result in additional discovery, cost, and preparation to defend new theories.  *Harrison Beverage Co.*, 133 F.R.D. at 468; *Cureton*, 252 F.3d at 273.  Such is not the case here.

Although the Proposed Counterclaim will likely require Edible to defend against new theories and conduct additional discovery into the parties' mobile applications, Edible has not demonstrated that it will be denied an opportunity to "do its own investigation and collection of information to support its defense" or that such additional discovery will be unduly burdensome.  *See* Opposition at 24.  Edible has also failed to establish that the amendment would require Edible to expend significant additional resources to conduct discovery and prepare for trial.  *See Corbisiero*, 2010 WL 5441662, at *2 (non-moving party has the burden to establish that it will suffer prejudice as a result of the amendment).  In fact, Edible only pointed to one additional subpoena it would need to serve upon the prior owner of the EDIBLES trademark.  Opposition at 24; *Corbisiero*, 2010 WL 5441662, at *5 (finding that the defendants will not suffer prejudice in part because the defendants will not have to expend significant resources to defend against plaintiff's new claim).

Finally, at the parties' request, the Court extended fact discovery to 90 days after the decision on this Motion.  *See* Letter Order dated May 13, 2022.  Therefore, granting the Motion to Amend will not prejudice Edible because discovery is still open.  *See Smith v. Honeywell Int'l, Inc.*, Civ. No. 10-03345, 2014 WL 301031, at *8 (D.N.J. Jan. 27, 2014) ("Generally, courts have not found unfair prejudice when a party moves to amend while discovery is still open."); *Harrison Beverage Co.*, 133 F.R.D. at 469 (prejudice to non-moving party is greater when amendment would require reopening of discovery).

The Court therefore finds allowing World Media to amend its counterclaims will not unfairly prejudice Edible.

### 2.    Futility

In determining whether an amendment would be futile, the Court may only look to the pleadings, as well as documents relied upon or integral to those pleadings.  *See Pharmaceutical*

*Sales & Consulting Co.*, 106 F. Supp. 2d at 765.  Edible claims that the proposed amendments are futile because they are frivolous and fail to state a claim; in addition, Edible charges that World Media's Proposed Counterclaim is inconsistent and irreconcilable with its own Answer. Opposition at 19–23.  Given the liberal standards applied to the amendment of pleadings under Rule 15, the Court finds that Edible has failed to meet the heavy burden of showing that the Proposed Counterclaim is futile.  *See Pharmaceutical Sales & Consulting Co.*, 106 F. Supp. 2d at 764.

To establish its counterclaim for trademark infringement under 15. U.S.C. § 1114, World Media must plead that: "(1) the mark at issue is valid and legally protectable; (2) the mark is owned by [World Media]; and (3) [Edible's] use of the mark is likely to cause confusion among consumers as to the origin of the goods or services at issue." *Wakefern Food Corp. v. Marchese*, Civ. No. 20-15949, 2021 WL 3783259, at *3 (D.N.J. Aug. 26, 2021).  World Media asserts its incontestable registration and ownership of its trademark EDIBLES for use in connection with mobile applications, thus meeting the first two elements.  Proposed Counterclaim ¶¶6–7.

The third element—likelihood of confusion—is highly factual and is typically inappropriate for resolution on a motion to dismiss.  *See Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) ("The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss.").  The Third Circuit considers several factors to evaluate whether likelihood of confusion exists: (1) similarity of the marks; (2) strength of the owner's mark; (3) price of goods and other factors indicative of care and attention expected of consumers when making a purchase; (4) length of time the defendant has used the mark without actual confusion; (5) intent of the defendant in adopting the mark; (6) evidence of actual confusion; (7) whether the parties used the same marketing channels; (8) the

extent to which the targets of the parties' sales efforts are the same; (9) relationship of the goods in the minds of consumers because of similarity of functions; and (10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that the prior owner is likely to expand into that market. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010). No factor is determinative and each factor must be weighed and balanced against the other. *See id.* at 182–83.

Here, World Media asserts that the owners of the Edible Apps infringe World Media's trademark rights by operating mobile applications using the term "Edible," which is confusingly similar to the EDIBLES mark World Media uses in its own mobile application. Proposed Counterclaim ¶¶17–27, 53–70. Accepting World Media's factual allegations as true, the Court finds it plausible that the Edible Apps are likely to cause confusion to mobile application users because their names contain the word "Edible," which is nearly identical to World Media's EDIBLES mark. *See Axelrod v. Heyburn*, Civ. No. 09-5627, 2010 WL 1816245, at *2 (D.N.J. May 3, 2010). Moreover, with respect to the Edible Go App and Edible Convention App, there is a factual dispute as to whether these two apps are available to the consuming public, which cannot be resolved at this stage. World Media has sufficiently alleged facts which, when accepted as true at this early stage, raise a plausible inference that Edible's use of the term "Edible" in connection with mobile applications is likely to cause confusion with World Media's EDIBLES mark. The Court therefore finds that World Media's amendment would not be futile at this stage. *See Corbisiero*, 2010 WL 5441662, at *5 (finding that the proposed amendment would not be futile upon acknowledging a factual dispute and drawing all inferences in plaintiff's favor).

The Court also rejects Edible's argument that World Media's Proposed Counterclaim is futile because "its long-standing answers to Edible's claims are irreconcilable with its new

allegations." Opposition at 22. It is true that a party cannot set forth allegations in the amended pleading that contradict factual statements in its original pleading. *See Fields v. Colgate Palmolive Co.*, Civ. No. 10-365, 2010 WL 5252537, at *5 (D.N.J. Dec. 15, 2010). In *Fields v. Colgate Palmolive*, the court denied leave to amend based on futility because the plaintiff improperly attempted to cure its untimely original complaint by inserting into the proposed amended pleading a later date on which his claim had allegedly accrued. *Id.* at *3–5. Here, the Court does not find such egregious contradictory allegations. Rather, in the Proposed Counterclaim, World Media claims that Edible's use of the term "Edible" in its mobile application is likely to cause confusion with World Media's use of its EDIBLES trademark in its mobile application. Proposed Counterclaim ¶¶22–23, 54. In its Answer, World Media denied that its use of the domain name www.edibles.com and EDIBLES App in the nutrition space is likely to cause confusion with Edible's use of is trademark in the fruit gifting space. Complaint ¶¶88, 149; Answer ¶¶88, 149. While this may ultimately be a distinction without a difference, at this early stage, the Court is constrained to construe all factual allegations in World Media's favor. *See Corbisiero*, 2010 WL 5441662, at *5. In doing so, the Court finds that Edible's Proposed Counterclaim is plausible on its face.

### C.   Conservation of Judicial Time and Resources

As noted previously, World Media first filed a separate action in which it raised the claims now incorporated in the Proposed Counterclaim. After filing the instant Motion to Amend, World Media withdrew its New Complaint but without prejudice. *See* Notice of Withdrawal of Complaint without Prejudice and related Order, Civ. Action No. 22-00216. Granting the Motion to Amend therefore will conserve judicial time and resources by resolving all claims in a single proceeding. Moreover, the Proposed Counterclaim, like the present suit, involves trademark infringement and

use of the terms Edible and Edibles by the existing parties, as well as new but related parties.  The Court therefore finds that granting the Motion to Amend will promote judicial efficiency and economy.  *See Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*, Civ. No. 18-17228, 2019 WL 11276331, at *2 (D.N.J. Oct. 18, 2019) (finding that consolidation of three cases stemming from same nucleus of facts, involving the same parties, and centering around the same question of law will best serve the interests of judicial efficiency and economy).

## VI.    CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS** on this **30th** day of **September, 2022,**

**ORDERED** that the Motion to Amend [Docket Entry No. 52] is **GRANTED;** and it is further

**ORDERED** that World Media is to file the Second Amended Answer and Counterclaims within 10 days of entry of this Order; and it is further

**ORDERED** that as previously ordered, fact discovery is to be completed within 90 days of entry of this Order.  The parties are to confer and submit a schedule for the completion of fact and expert discovery and the filing of dispositive motions; and it is further

**ORDERED** that the Court will conduct a status conference on November 1, 2022 at 3:00 p.m.


_____
LOIS H. GOODMAN
United States Magistrate Judge